SAÚL VÉLEZ RODRÍGUEZ, demandante y recurrente, *v.* PUEBLO INTERNATIONAL, INC. y OTROS, demandados y recurridos.

*Número:* RE-93-125　　　*Resuelto:* 18 de marzo de 1994

502

*Marta Díaz Pietri* y *Gladys J. Ramos Rosario,* de *Servicios Legales de Puerto Rico, Inc.,* abogadas del recurrente; *Jorge C. Pizarro* y *Daniel R. Domínguez,* de *Domínguez y Totti,* abogados del recurrido.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

## Hechos

El Sr. Saúl Vélez Rodríguez era empleado de Pueblo International, Inc. (en adelante Pueblo). El 9 de junio de 1988, mientras desmontaba unas cajas en una rampa, sufrió un accidente que le ocasionó una lesión lumbar. El 28 de febrero de 1989, luego de recibir un tratamiento en el Fondo del Seguro del Estado (en adelante F.S.E.), fue dado de alta habilitado para trabajar. En esa misma fecha solicitó la reinstalación en su puesto. El señor Vélez Rodríguez mantuvo comunicación con Pueblo bajo la creencia de que sería reinstalado. Esto nunca se realizó.

El 18 de octubre de 1991, dos (2) años y ocho (8) meses después de haber solicitado la reinstalación, el señor Vélez Rodríguez instó una demanda contra Pueblo al amparo del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 7. Alegó que, a pesar de haber solicitado la reinstalación a tiempo, Pueblo incumplió con la obligación que le impone el mencionado artículo. Solicitó que se le reinstalara en su empleo; se le pagaran veintiocho mil ochocientos cuarenta y ocho dólares ($28,848) en salarios no devengados, y tres mil dólares ($3,000) por sufrimientos y angustias mentales.

Pueblo presentó una moción de sentencia sumaria fundada en que la demanda estaba prescrita. Sostuvo que el demandante estaba reclamando daños al amparo del Art. 5a, *supra,* y que al no existir un término prescriptivo en la

ley para presentar la acción, debía aplicarse, por ser el más análogo, el de un (1) año establecido en el Art. 1868(2) del Código Civil, 31 L.P.R.A. sec. 5298(2), para exigir la responsabilidad civil por las obligaciones derivadas de la culpa o negligencia, conforme al Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. También adujo que el término comenzó a transcurrir a partir de 28 de febrero de 1989, fecha en que el señor Veléz Rodríguez solicitó la reinstalación, y que al momento en que presentó la demanda, el 18 de octubre de 1991, dicho término no había sido interrumpido mediante requerimiento extrajudicial alguno.

En su escrito en oposición a la referida moción, el señor Vélez Rodríguez arguyó que el término prescriptivo aplicable no era de un (1) año, sino el de tres (3) años dispuesto para las reclamaciones de salarios por el Art. 1867 del Código Civil, 31 L.P.R.A. sec. 5297, y la Sec. 32 de la Ley de Salario Mínimo de Puerto Rico, Ley Núm. 96 de 26 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 246(d)(a). Señaló, además, que había realizado gestiones extrajudiciales desde la fecha en que fue dado de alta por el F.S.E. dirigidas a interrumpir el término prescriptivo aplicable. Por último, argumentó que el término prescriptivo comenzó a transcurrir, no desde que venció su derecho a ser reinstalado, sino desde que supo que éste no se le reconocería.

En su réplica a la moción en oposición presentada por el señor Vélez Rodríguez, Pueblo se reafirmó en que el término prescriptivo aplicable es el de un (1) año. También señaló que en aquellos estados federales donde se ha reconocido una causa de acción contra los patronos que despiden a los empleados, que se hayan acogido a los beneficios provistos por las leyes de compensaciones por accidentes del trabajo se ha dispuesto, ya sea mediante estatuto o por interpretación judicial, el término de un (1) año para reclamar.

Así las cosas, el Tribunal Superior acogió la posición de Pueblo y dictó sentencia sumaria. Concluyó que ante la ausencia de un término prescriptivo fijado por ley para iniciar la acción de reinstalación en el empleo luego de que un obrero es dado de alta por el F.S.E., y su patrono rehúsa reinstalarlo, le era aplicable, por analogía, el término de un (1) año de las acciones de daños y perjuicios. Además, determinó que éste transcurrió sin interrupción.

Inconforme, el señor Vélez Rodríguez acudió ante nos mediante una solicitud de revisión, señalando que el tribunal de instancia erró al determinar que el término prescriptivo para incoar una acción al amparo del Art. 5a, *supra*, es de un (1) año y no de tres (3) años.

Decidimos revisar y expedimos el recurso.

Procede que revoquemos la sentencia recurrida debido a que el término prescriptivo más análogo para solicitar la reinstalación en el empleo, los salarios dejados de percibir y los daños al amparo del Art. 5a, *supra*, es el trienal que comparten la ley que regula el despido injustificado, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a–185m, para solicitar indemnización a causa de dicho despido, y la Ley de Salario Mínimo de Puerto Rico, Ley Núm. 96, *supra*, 29 L.P.R.A. secs. 245–246m, para la reclamación de salarios. Esta conclusión requiere que presentemos un breve resumen del desarrollo de la protección a los trabajadores contra el despido injustificado tanto en Estados Unidos como en Puerto Rico.

# I

## A. *Doctrina del empleo a voluntad en Estados Unidos*

En Estados Unidos existe la doctrina del empleo a voluntad (*employment at will*) la cual establece que un patrono en el sector privado puede despedir a un empleado contratado por tiempo indeterminado, con o sin justa cau-

sa,(¹) y que el empleado no tiene por esta acción recurso judicial alguno contra su ex patrono. *1 Larson, Unjust Dismissal* Sec. 1.01, págs. 1-2 y 1-3 (1993) De hecho, Estados Unidos es de los pocos países industrializados que no tiene una ley nacional sobre el despido injustificado de sus empleados. J.R. Bellace, *A Right of Fair Dismissal: Enforcing a Statutory Guarantee*, 16 U. Mich. J.L. Rev. 207, 210–217 (1983).(²) Además, es de los países industrializados donde ocurren más despidos. "The employment at will issue", The Bureau of National Affairs, Labor Relations Reporter, Labor Special Project Unit, 22 de noviembre de 1982, Vol. III, Núm. 23, Washington D.C., citado en R. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, Pubs. Laborales, 1989, pág. 111.

A partir de la aprobación de la Ley Nacional de Relaciones del Trabajo (*National Labor Relations Act of 1935*), 29 U.S.C. sec. 151 *et seq.*, y de haber sido ésta declarada constitucional por el Tribunal Supremo federal, *Labor Board v. Jones & Laughlin*, 301 U.S. 1 (1937), tanto el Congreso como las legislaturas estatales promulgaron leyes que establecían excepciones a la doctrina del empleo a voluntad a fin de controlar, en algunas circunstancias, los despidos sin justa causa.(³) Sin embargo, en la actualidad sólo dos (2)

---

(¹) "[F]or good cause, for no cause or even for cause morally wrong." *Payne v. Railroad Company*, 81 Tenn. 507, 519–520 (1884).

(²) En el artículo J.R. Bellace, *A Right of Fair Dismissal: Enforcing a Statutory Guarantee*, 16 U. Mich. J.L. Rev. 207 (1983), se discute la Convención Internacional de Organizaciones Laborales (*International Labor Organization Convention*) la cual requiere que los empleados de los países que ratifiquen el tratado sólo podrán ser despedidos por justa causa. De los ciento veintiséis (126) países que votaron por la Convención, sólo siete (7), entre ellos Estados Unidos, votaron en contra.

(³) Véase, por ejemplo, el Título VII de la Ley de Derechos Civiles de 1964 (42 U.S.C. sec. 200e) que prohíbe que los patronos tomen decisiones relacionadas con sus empleados por motivo de raza, color, sexo, origen nacional o religión. Además, véanse las leyes federales que prohíben el discrimen por edad o por incapacidad. *The Age Discrimination in Employment Act of 1967* (29 U.S.C. sec. 621 *et seq.*); *The Rehabilitation Act of 1973* (29 U.S.C. sec. 791 *et seq.*). Otro paso significativo ha sido la aprobación de la *Uniform Law Commissioner's Model Employment Termination Act* en la Conferencia anual del *Uniform Law Commissioners*, el 8 de agosto de 1991, y la recomendación de que fuera promulgada en todos los estados. De nuestra investiga-

jurisdicciones tienen un estatuto para reglamentar el despido injustificado. El estado de Montana, que fue el primero en aprobar una ley que regula el despido injustificado de empleados por término indefinido, *The Montana Wrongful Discharge from Employment Act*, HB 241 L.1987, de 1ro de julio de 1987, e Islas Vírgenes que tiene una ley similar, con derecho a la reinstalación, *The Virgin Islands Wrongful Discharge Statute*, Tit. 24, C.3, secs. 76–79 (1986). Ahora bien, el desarrollo más importante para sancionar el despido injustificado en el derecho laboral estadounidense ha sido el de las excepciones, creadas por los tribunales, a la doctrina del empleo a voluntad. Éstos, al enfrentarse a ciertos abusos por parte de algunos patronos hacia sus empleados para los cuales *no existía protección legislativa alguna*, han creado jurisprudencialmente una serie de remedios mediante la aplicación de varias teorías del *common law*. De éstas, la más importante es la excepción de política pública, la cual establece que un patrono no puede despedir a un empleado contratado por tiempo indeterminado si el propósito y la intención de tal despido es frustrar y subvertir una clara política pública estatal.[4] *Larson*, supra; *Petermann v. International Brotherhood, Etc.*, 174 Cal.App.2d 184, 344 P.2d 25 (D. Cal. 1959); *Frampton v. Central Indiana Gas Company*, 260 Ind. 249, 297 N.E.2d 425 (1973), 260 Ind. 249, 297 N.E.2d 425 (1973). Una de las excepciones es la que permite una acción de daños del obrero contra su patrono por haberlo des-

---

ción surge que ésta aún no ha sido aprobada por legislatura estatal alguna. Las disposiciones de la ley se alejan de la doctrina del empleo a voluntad debido a que sólo permite el despido por justa causa. 1 *Larson, Unjust Dismissal* Cap. 1, pág. 10.1 (1993).

[4] Entre las excepciones de violación de política pública que se han reconocido están las siguientes: despedir a un empleado por rehusarse a cometer o participar en un acto criminal o ilegal; por reclamar bajo leyes protectoras del trabajo; por pertenecer a una unión obrera; por negarse a someterse a una prueba de polígrafo, de alcohol o de drogas, o a la prueba del S.I.D.A. Véase *Larson*, supra, Caps. 6 y 7.

Las excepciones de política pública han sido aplicadas por las Cortes Supremas de 37 estados. *Larson*, supra, Sec. 2.18, pág. 2-18. En Puerto Rico la adoptamos en *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35, 65–66 (1986).

pedido como represalia *(retaliatory discharge)* por haber instado una reclamación de compensación por accidente del trabajo *(workmen's compensation claim)*. Véase 2A *Larson's Workmen's Compensation Law* Sec. 68.36 (1992).[5]

*Frampton v. Central Indiana Gas Company*, supra, fue el primer caso en reconocer una acción por *retaliatory discharge* y el segundo en crear una excepción de política pública a la doctrina del empleo a voluntad. Frampton solicitó a la Corte Suprema de Indiana un remedio por haber sido despedido de su trabajo como represalia por haber entablado una reclamación de compensación por accidente del trabajo. El patrono reclamó su derecho a despedir al empleado debido a que éste era un empleado por tiempo indeterminado y, por lo tanto, le aplicaba la doctrina de empleo a voluntad. Íd., pág. 428. La Corte reconoció que, bajo circunstancias ordinarias, un patrono puede despedir a un empleado a voluntad en cualquier momento y sin causa. No obstante, estableció:

> [W]hen an employee is discharged solely for exercising a statutory conferred right, an exception to the general rule must be recognized. Íd.

El principio cardinal en el caso es la existencia de una fuerte política pública a favor de que estén disponibles los beneficios establecidos por ley para los trabajadores que sufren un accidente del trabajo.[6] Por consiguiente, de per-

---

[5] Las jurisdicciones que han tratado este asunto judicialmente han reconocido una acción de daños *(tort)*. *Frampton v. Central Indiana Gas Company*, 260 Ind. 249, 297 N.E.2d 425 (1973); *Sventko v. Kroger Co.*, 69 Mich.App. 644, 245 N.W.2d 151 (1976); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 384 N.E.2d 353 (1978); *Brown v. Transcon Lines*, 284 Or. 597, 588 P.2d 1087 (D. Or. 1978); *Lally v. Copygraphics*, 173 N.J.Super. 162, 413 A.2d 960 (1980); *Murphy v. City of Topeka-Shawnee City, Et.*, 6 Kan.App.2d 489, 630 P.2d 186 (D. Kan. 1981); *Roberie v. Gulf Oil Corp.*, 545 F. Supp. 298 (W.D. La. 1982); *Darnell v. Impact Industries, Inc.*, 105 Ill.2d 158, 473 N.E.2d 935 (1984); *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730 (1984); *Hansen v. Hannah's*, 100 Nev. 60, 675 P.2d 394 (D. Nev. 1984).

[6] A principios de este siglo, varias legislaturas estatales establecieron leyes de compensación por accidentes del trabajo para brindar a los obreros un remedio más efectivo para accidentes relacionados con el trabajo que los establecidos por las ac-

mitirse que el patrono pudiera coartar a sus empleados el ejercicio de sus derechos, destruiría el propósito de la ley, así como libraría al patrono de la obligación de permitir que sus empleados disfruten de los beneficios establecidos. Como la conducta del patrono constituía un acto intencional ilícito, la Corte permitió que el demandante presentara una acción en daños contra aquél para reclamar daños compensatorios y punitivos. *Frampton v. Central Indiana Gas Company*, supra, pág. 427.[7]

## B. *El despido injustificado en Puerto Rico*

Hasta 1930 existió en Puerto Rico la misma situación que en Estados Unidos. Es decir, los empleados contratados por tiempo indeterminado no tenían a su alcance acción alguna contra su patrono cuando éste los despedía sin justa causa.[8]

---

ciones de daños y perjuicios. Mediante estas acciones se podía conseguir una indemnización mayor, pero era necesario probar la negligencia del patrono. Sin embargo, defensas como la asunción de riesgos y la negligencia contributoria, en ocasiones, impedían que se otorgara la compensación. Por el contrario, las leyes de compensación por accidentes del trabajo proveían ayuda económica y tratamiento médico inmediato, libre de las complejidades de una acción ordinaria de daños. Por tal razón, los empleados cedieron la compensación completa por los daños, tanto económicos como los no económicos, a cambio de unos beneficios módicos, pero seguros. Por su parte, los patronos asegurados tenían inmunidad en acciones de daños relacionados con accidentes del trabajo aun cuando hubiere mediado negligencia de su parte. Véase 2A *Larson's Workmen's Compensation Law* Sec. 5.30 (1992). Puerto Rico se unió a esta corriente en 1918. Véanse, además: *Pacheco Pietri y otros v. E.L.A. y otros*, 133 D.P.R. 907 (1993); *Santiago Hodge v. Park Davis & Co.*, 126 D.P.R. 1 (1990).

[7] Otros estados han legislado para evitar este tipo de represalia, e invariablemente proveen algún tipo de remedio para estos casos. Ariz. Const. Act. 18, Sec. 3; Cal. Labor Code Sec. 132(a) (1973); Fla. Stat. Ann. Sec. 440.205 (West 1979); Hawaii Rev. Stat. Sec. 378-32(2) (1976); Me. Rev. Stat. tit. Sec. 111 (West 1971); Md. Ann. Code Art. 101, Sec. 39A(a) (1979); Mo. Rev. Stat. Sec. 287.780 (1973); N.J. Worker's Comp. Law Sec. 120 (McKinney Supp. 1980); N.C. Gen.Stat. sec. 97–6.1 (1979); Ohio Rev.Code sec. 4123.90 (1979); Okla. Stat. Ann. tit. 85, Sec. 5 (West Sup.1980); Or. Rev. Stat. Sec. 659.410; S.C. Code Ann. Sec. 41.1.80 (Law Co-op. Supp. 1986); Tex Rev. Civ. Stat. Ann. Art. 8307(c) (Vernon Supp. 80) (West 1971); Wis. Stat. Ann. Sec. 102.35 (West 1973 and Supp. 1980). Además, existe la ley federal *Longshoremen's and Harbor Worker's Compensation Act*.

Estas leyes varían grandemente en sus detalles y en los remedios que proveen. *Larson, Unjust Dismissal*, supra, págs. 6-45 a 6-49.

[8] Excepto los empleados del comercio. Según dispuesto en el Código de Comercio, si un empleado de comercio contratado sin tiempo fijo era despedido sin justa

 La Ley Núm. 43 de 28 de abril de 1930 estableció, por primera vez, que los empleados contratados por tiempo indeterminado que fueran despedidos sin justa causa y sin previo aviso, tenían el derecho a recibir de su patrono una compensación equivalente al salario de una semana, quince (15) días o un (1) mes, según fuera el método de pago de su salario. Esta ley fue enmendada por la Ley Núm. 84 de 12 de mayo de 1943, la cual fue dejada sin efecto por la Ley Núm. 50 de 20 de abril de 1949 (29 L.P.R.A. sec. 180n). Al igual que su antecesora, también proveía protección contra el despido sin justa causa. La Ley Núm. 50, *supra*, fue sustituida por la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, *supra*. Esta es la ley que regula actualmente el despido injustificado. Su exposición de motivos, así como su historial legislativo, muestran la preocupación del legislador de proteger a los trabajadores en la tenencia de empleo y su interés por desalentar la incidencia de despidos injustificados. La Ley provee una indemnización para los empleados contratados por término indefinido que son despedidos sin justa causa. Ésta define específicamente qué es justa causa,[9] Art. 2 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185b, y excluye de la definición de "despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con

_____

causa, tenía derecho a que se le pagara una compensación por el despido.

[9] "Se entenderá por justa causa para el despido de un empleado de un establecimiento:

"(a) Que el obrero siga un patrón de conducta impropia o desordenada.

"(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

"(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

"(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

"(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

"(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido." 29 L.P.R.A. sec. 185b.

el buen y normal funcionamiento del establecimiento".([10]) El remedio que tiene el ex empleado es una indemnización equivalente a un (1) mes de sueldo, más una (1) semana de compensación por cada año de servicio con el patrono. Art. 1 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185a. La compensación provista por la ley es el remedio exclusivo en casos de despido injustificado. *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517, 526 (1977); *Porto y Siurano v. Bentley P.R., Inc.*, 132 D.P.R. 331 (1992).([11]) Sin embargo, esta exclusividad no se extiende a otras situaciones específicas dentro del campo laboral en las cuales el trabajador se encuentra protegido por legislación social especial.([12])

---

([10]) Tampoco se considera justa causa para el despido "la colaboración o expresiones hechas por [el empleado], relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo de Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley". 29 L.P.R.A. sec. 185b.

([11]) No obstante, el remedio que ésta provee no es el exclusivo si con el despido concurren otras actuaciones torticeras independientes al despido. *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517 (1977); *Porto y Siurano v. Bentley P.R., Inc.*, 132 D.P.R. 331 (1992). También existe una excepción al remedio exclusivo en aquellos despidos que frusten o subviertan una clara política pública, como por ejemplo, aquella que permite a los trabajadores vindicar sus derechos constitucionales. *Arroyo v. Rattan Specialties, Inc.*, supra, págs. 65–66. La Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a–185m) no aplica cuando están involucrados los convenios colectivos. *J.R.T. v. Securitas, Inc.*, 111 D.P.R. 580, 583–584 (1981).

([12]) Entre las leyes consideradas como legislación social especial se encuentran las siguientes:

1. El Art. 1 de la Ley Núm. 47 de 28 de abril de 1930 (29 L.P.R.A. sec. 131) prohíbe el despido de un trabajador con el propósito de inducirlo a votar en cualquier elección general.

2. La Sec. 4 de la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. sec. 469, conocida como Ley de Madres Obreras, prohíbe el despido de la mujer embarazada.

3. El Art. 8 de la Ley Núm. 130 de 8 de marzo de 1945, según enmendada, 29 L.P.R.A. sec. 69(1)(c), prohíbe el despido por participar en actividades unionales.

4. El Art. 1 de la Ley Núm. 382 de 11 de mayo de 1950 (29 L.P.R.A. sec. 136) prohíbe el despido por motivaciones políticas.

5. La Sec. 24 de la Ley Núm. 96 de 26 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 245w, prohíbe el despido por instar una reclamación contra el patrono o cooperar en una investigación al amparo de la Ley de Salario Mínimo, de cualquiera otra ley laboral o participar en un comité de salario mínimo.

6. El Art. 1 de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146, prohíbe el despido del trabajador por razón de edad, sexo, color, raza, origen o condición social, ideas políticas, ideas religiosas, origen nacional y matrimonio.

En estos casos, el remedio que se provee es superior al que tiene el trabajador que es despedido sin justa causa y que no se encuentra en estas situaciones específicas. El trabajador que se encuentra en una de estas situaciones no puede ser despedido en violación a estas leyes. Si esto ocurre, como regla general, el remedio que éstas proveen in

7. La Ley Núm. 87 de 26 de junio de 1964, según enmendada, 29 L.P.R.A. sec. 152, prohíbe el despido porque el empleado haya sido llamado a servir como jurado.

8. La Sec. 3 de la Ley de Beneficios por Incapacidad Temporal, Ley Núm. 139 de 26 de junio de 1968, según enmendada, 11 L.P.R.A. sec. 203(q), requiere al patrono reservar el empleo que desempeñaba el trabajador al momento de comenzar la incapacidad y a reinstalarlo.

9. La Sec. 5 de la Ley de Protección Social por Accidentes de Automóviles, Ley Núm. 138 de 26 de junio de 1968, según enmendada, 9 L.P.R.A. sec. 2054(3)(B), obliga al patrono a reservar el empleo al trabajador mientras está inhabilitado para trabajar y acogido a los beneficios de ley, y a reinstalarlo.

10. El Art. 3-A de la Ley Núm. 49 de 22 de mayo de 1968, según enmendada, 29 L.P.R.A. sec. 355a, prohíbe el despido de un empleado por negarse a levantar objetos que excedan el peso máximo establecido por ley o reglamento del Secretario del Trabajo y Recursos Humanos de Puerto Rico.

11. La Sec. 233 de la Ley Núm. 62 de 23 de junio de 1969, según enmendada, 25 L.P.R.A. sec. 2084, prohíbe el despido de los empleados llamados a servir en la Guardia Nacional.

12. La Sec. 29 de la Ley de Seguridad y Salud en el Trabajo, Ley Núm. 16 de 5 de agosto de 1975 (29 L.P.R.A. sec. 361a(a)) prohíbe el despido por presentar una querella contra el patrono o por ejercer los derechos concedidos por esta ley.

13. El Art. 4 de la Carta de Derechos del Veterano Puertorriqueño, Ley Núm. 13 de 2 de octubre de 1980, según enmendada, 29 L.P.R.A. sec. 814, requiere que se reponga al veterano en el mismo trabajo que desempeñaba al tiempo de ser llamado a las Fuerzas Armadas.

14. El Art. 24 de la Sec. VII de la Ley Especial para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1985 (8 L.P.R.A. sec. 523(14)) prohíbe el despido de un empleado por haber autorizado una retención de salario para el pago de pensiones alimentarias o por haber sido requerido por el tribunal al patrono a hacer tal retención.

15. El Art. 4 de la Ley Núm. 49 de 27 de junio de 1987 (15 L.P.R.A. sec. 1104) prohíbe el despido mientras el empleado se encuentra en licencia deportiva especial.

16. El Art. 3 de la Ley Núm. 69 de 6 de julio de 1985 (29 L.P.R.A. sec. 1323) prohíbe el despido por razón de sexo.

17. El Art. 16 de la Ley de Seguro Social para Choferes y Otros Empleados, Ley Núm. 428 de 15 de marzo de 1950, adicionado por la Sec. 1 de la Ley Núm. 16 de 15 de abril de 1988 (29 L.P.R.A. sec. 693a), obliga al patrono a reservar el empleo que desempeñaba el trabajador al momento de comenzar la incapacidad y a reinstalarlo.

18. El Art. 4 de la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155c) prohíbe el despido por rechazar conducta del patrono constitutiva de hostigamiento sexual.

19. El Art. 9 de la Ley para Regular las Operaciones de Establecimientos Comerciales, Ley Núm. 1 de 1ro de diciembre de 1989 (29 L.P.R.A. sec. 308) prohíbe el despido del empleado que se niegue a que se fraccione o altere su horario de trabajo para la empresa acogerse al nuevo horario de trabajo que permite esta ley.

cluye la reinstalación en el empleo, los salarios dejados de percibir y, en algunos casos, los daños que el despido le ocasionó, así como, en ciertas ocasiones, una suma igual por concepto de penalidad. Véase Delgado Zayas, *op. cit.*, págs. 114–115.

Es importante señalar que el Art. 2 de la Ley Núm. 80, *supra*, fue enmendado por la Ley Núm. 65 de 3 de julio de 1986, para proveer que los empleados despedidos por colaborar o por hacer expresiones en los foros gubernamentales tendrán derecho a su reinstalación y a los salarios dejados de percibir. 29 L.P.R.A. sec. 185b. El remedio que se concede equipara esta protección a los casos de las situaciones protegidas donde se prohíbe el despido.[13]

Una de estas situaciones en donde se prohíbe el despido es la que dispone el Art. 5a, *supra*. Éste refleja el interés del legislador en proteger a los trabajadores de la situación indeseable de que por haber sufrido un accidente del trabajo o contraído una enfermedad en el trabajo, su patrono lo despida sin justa causa, o que cuando regrese dado de alta, no tenga trabajo. Delgado Zayas, *op. cit.*, pág. 189.

En primer lugar, cuando un trabajador sufre un accidente o enfermedad ocupacional que lo inhabilita para

---

20. El Art. 2 de la Ley Núm. 115 de 20 de diciembre de 1991 (29 L.P.R.A. sec. 194a) prohíbe el despido de un empleado que ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio o información ante un foro legislativo, administrativo o judicial.

21. El Art. 13 de la Ley Núm. 44 de 2 de julio de 1985 (1 L.P.R.A. sec. 511), adicionado por la Ley Núm. 53 de 30 de agosto de 1992, prohíbe el despido de personas con impedimentos.

Puerto Rico está considerado como una de las jurisdicciones más liberales, en términos de la legislación laboral, en Estados Unidos. *Larson, Unjust Dismissal*, supra, Sec. 10.40, pág. 10-258.91; *Weatherly v. International Paper Co.*, 648 F. Supp. 872, 877 (D. P.R. 1986).

[13] Existen otras situaciones en las que se prohíbe el despido del empleado pero no se incluye el remedio de reinstalación. Las Secs. 2 y 5 de la Ley Núm. 17 de 17 de abril de 1931, según enmendada, 29 L.P.R.A. secs. 172 y 175(5), prohíben el despido por haber gastado el obrero su salario en un lugar, de un modo, o con una persona determinada, o porque no habite propiedad del patrono o su mandatario. Para estos casos la ley provee un remedio penal. También prohíbe el despido por negarse el obrero a que se le descuente de su salario determinadas sumas para ser donadas a instituciones benéficas. En este caso, el remedio que provee es de carácter económico.

trabajar y se acoge a los beneficios de la Ley Núm. 45, *supra*, ésta obliga al patrono a reservarle su empleo, desde el momento que ocurra el accidente y por doce (12) meses. *No puede despedirlo.* Tan pronto como el trabajador es dado de alta por el F.S.E., puede solicitar y obtener que se le reponga en su empleo, y el patrono *está obligado a reinstalarlo en su trabajo* siempre y cuando se cumplan tres (3) requisitos: (1) que la solicitud se haga dentro del término de quince (15) días([14]) de haber sido dado de alta definitivamente y autorizado a trabajar por el F.S.E., y que no se realice luego de transcurrido doce (12) meses desde la fecha del accidente o enfermedad; (2) que el obrero esté mental y físicamente capacitado para desempeñarse en las funciones del empleo que ocupaba, y (3) que dicho empleo subsista al momento de la solicitud. *Torres v. Star Kist Caribe, Inc.*, 134 D.P.R. 1024 (1994). Le corresponde al patrono levantar como defensa que no existe una de estas condiciones para quedar liberado de su obligación. Si el patrono incumple con su obligación, vendrá obligado a reinstalar al empleado. Además, pagará al obrero o a sus beneficiarios los salarios que hubiese devengado el trabajador de haber sido reinstalado y le responderá de todos los daños y perjuicios que le haya ocasionado.([15]) El empleado o sus beneficiarios podrán presentar la reclamación de reinstalación o de daños, o ambas, en un tribunal por acción ordinaria o mediante el procedimiento de reclamación

---

([14]) El propósito de la notificación de los quince (15) días es evitar que el patrono levante como defensa que no repuso al empleado porque no sabía que éste había sido dado de alta y que estaba disponible para trabajar. De esta forma se establece una fecha cierta como límite de responsabilidad del patrono. Si transcurren los quince (15) días sin que el obrero solicite su reposición, éste pierde su derecho. El patrono estará libre entonces de llenar el puesto con otro empleado. Delgado Zayas, *op. cit.*

([15]) La protección del empleo que establece esta ley se ha extendido legislativamente a otras situaciones tales como: la Ley de Beneficios por Incapacidad Temporal, *supra*, la Ley de Protección Social por Accidentes de Automóviles, *supra*, y la Ley de Seguro Social para Choferes y Otros Empleados, *supra*.

de salarios establecido en la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. secs. 3118–3132).([16])

Como podemos notar, la protección que concede esta ley es mayor que la que concede la Ley Núm. 80, *supra*. Su intención no es conceder una protección meramente económica para el trabajador, sino que pretende proteger, esencialmente, la tenencia de empleo. Delgado Zayas, *op. cit.*, pág. 193. De esta manera provee un incentivo mayor para que los patronos no despidan empleados que están disfrutando de los beneficios que les provee la ley.

## II

*Aplicación de la norma*

■ De lo anterior surge que cuando un empleado que estuvo reportado al F.S.E. solicita ser reinstalado en su empleo y cumple con los requisitos establecidos por la ley, y su patrono no lo reinstala, esto constituye un despido.([17]) El Departamento del Trabajo y Recursos Humanos ha establecido que "en términos generales el despido ocurre cuando el patrono explícita o tácitamente da por terminado el contrato de trabajo con uno o más empleados, o cuando el patrono se niega explícita o tácitamente a permitir el reingreso del trabajador a su empleo después de este haber estado ausente en aquellas situaciones en que la ley requiere al patrono reservarle el empleo". M. Morales Reyes, *Guía para la interpretación y aplicación de la Ley Núm. 80*

---

([16]) La característica esencial de este procedimiento es su naturaleza sumaria. *Srio. del Trabajo v. J.C. Penney Co., Inc.*, 119 D.P.R. 660, 665 (1987). La Sec. 1 de la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. sec. 3118) establece que el procedimiento puede ser utilizado por todo "obrero o empleado [que] tuviere que reclamar de su patrono cualquier derecho o beneficio, o cualquier suma por concepto de compensación por trabajo o labor realizadas para dicho patrono, o por compensación en caso de que dicho obrero o empleado hubiere sido despedido de su empleo sin causa justificada".

([17]) La parte demandada, en su solicitud de sentencia sumaria, no expuso las razones que tuvo para no reinstalar en su empleo al demandante basándose en que resultaban impertinentes debido a que la petición se fundamentaba exclusivamente en la defensa de prescripción.

*aprobada el día 30 de mayo de 1976,* Departamento del Trabajo y Recursos Humanos, 1979, pág. 1.

Cuando un empleado solicita su reinstalación y no está presente alguna de las excepciones que permite la ley para no reinstalar a un empleado que es dado de alta por el F.S.E., así como tampoco está presente alguno de los supuestos establecidos por la Ley Núm. 80, *supra,* considerados como justa causa para el despido, nos encontramos ante un despido injustificado.

■ Al tratarse de un despido injustificado, el término prescriptivo más análogo([18]) para solicitar los remedios que

---

([18]) Sobre la técnica de las analogías expone Puig Brutau:

"Cuando las normas no contemplan el supuesto específico del caso que se ha de resolver, existe una laguna legal; pero si el intérprete advierte que está previsto otro supuesto *semejante* al planteado y en los dos aprecia *identidad de razón,* podrá aplicar por analogía la norma del caso regulado al que no lo está, porque la misma razón justifica la identidad de la consecuencia." (Énfasis suplido). J. Puig Brutau, *Introducción al Derecho Civil,* Barcelona, Ed. Bosch, 1982, págs. 337–338.

La técnica de las analogías fue adoptada por este Tribunal en *Olmo v. Young & Rubicam of P.R., Inc.,* 110 D.P.R. 740, 745 (1981). En dicho caso, el demandante reclamó daños bajo las disposiciones de la Ley Núm. 100, *supra,* que prohíben el discrimen racial. Como esta acción no tenía término prescriptivo para ejercitarla, aplicamos el término análogo de un (1) año. Señalamos que este término prescriptivo se había hecho extensivo a otras acciones indemnizatorias de naturaleza similar a las acciones derivadas de la culpa o negligencia a que se refiere el Art. 1802 del Código Civil, 32 L.P.R.A. sec. 5141. Aplicamos la regla establecida en *Muriel v. Suazo,* 72 D.P.R. 370, 371 (1951), por ser la más análoga. Éste reconoció la existencia en Puerto Rico de una causa de acción de daños y perjuicios por discrimen racial bajo la Ley de Derechos Civiles de Puerto Rico. Cabe señalar que en este caso, el señor Olmo reclamó que el plazo prescriptivo aplicable era el trienal establecido en la Ley de Salario Mínimo. Determinamos que esta última hacía referencia a la prescripción de la reclamación de salarios y no a la de discrimen racial. Por tal razón señalamos:

"La analogía más estrecha en este caso es claramente con la regla de *Muriel.* Lo que se solicita[n] aquí son daños por discrimen racial culposo y no por salarios sin percibir." (Énfasis en el original.) *Olmo v. Young & Rubicam of P.R., Inc.,* supra, pág. 746.

También ofrecimos las siguientes razones para establecer el plazo prescriptivo de un (1) año:

"...la razón de la brevedad del plazo de un año reside, entre otros factores, en la necesidad de que el lapso de tiempo no confunda ni borre los esclarecimientos de la responsabilidad y la evaluación de su cuantía." *Olmo v. Young & Rubicam of P.R., Inc.,* supra, pág. 747.

Además, indicamos:

"Al igual que en el caso de las acciones indeminizatorias de tipo general, conviene que el subtipo de las acciones por violación de los derechos humanos se incoe y dilucide con prontitud. La prueba es a menudo evanescente. Puede esfumarse con rapidez. No es vino que madure con los años." Íd.

establece la ley, es el trienal establecido por la Ley Núm. 80, *supra*, que regula el despido sin justa causa, el cual dispone que los derechos que ésta concede prescriben luego de transcurridos tres (3) años de la fecha efectiva del despido.[19] Art. 12 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 1851.

Varias razones militan en favor de esta conclusión: primero, ambas disposiciones legales tiene identidad de propósitos, esto es, evitar el despido injustificado de empleados; segundo, el término prescriptivo en la Ley Núm. 80, *supra*, representa la expresión del legislador del término que considera razonable para solicitar una indemnización por despido injustificado; tercero, el plazo trienal ha sido establecido consistentemente en las reclamaciones de indemnización obrero-patronales, Ley Núm. 80, *supra*; Ley de Salario Mínimo de Puerto Rico, *supra*; Ley Núm. 115 de 20 de diciembre de 1991 (29 L.P.R.A. sec. 194 *et seq.*), que prohíbe el despido por represalia; cuarto, aquí no estamos ante un despido como represalia por haber solicitado una reclamación por accidente del trabajo, sino ante un empleado que no fue reinstalado en su empleo luego de haber sido dado de alta por el F.S.E.[20]

---

No vemos que esta situación se vaya a dar en el caso ante nos. Además, éste no trata de una acción de daños per se. Por otro lado, debemos recordar que la Ley Núm. 100, *supra*, protege tanto al empleado como al aspirante a empleo, lo que justifica un término menor. 29 L.P.R.A. sec. 146.

[19] Los únicos términos prescriptivos existentes para acciones por despido injustificado son el de tres (3) años establecido por la Ley Núm. 80, *supra*, y la Ley Núm. 151, *supra*, sobre prohibición de despido por represalia, y la reclamación bajo la Ley Núm. 100, *supra*, que prescribe al año.

[20] En el caso *Weatherly v. International Paper Co.*, supra, el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico llegó a la misma conclusión que la nuestra sobre cuál debe ser el término presriptivo para todas las acciones por despido injustificado. El tribunal expresó:

"WRONGFUL DISCHARGE UNDER THE LAW OF PUERTO RICO

"Puerto Rico's Act No. 80, Article 1 provides that:

"Every employee in commerce, industry or any other business or place of employment ... in which he works for compensation of any kind, under contract *without a fixed time*, who is discharged from his employment *without good cause* shall be entitled to receive from his employer, in addition to the salary he may have earned:

"(a) the salary corresponding to one month as indemnity; [and]

Abona a la idoneidad de dicho término, que es idéntico al establecido por la Ley de Salario Mínimo de Puerto Rico para la reclamación de salarios, uno (1) de los remedios que provee la Ley de Compensaciones por Accidentes del Trabajo.[21] La definición de "salario" establecida en la Ley de Salario Mínimo de Puerto Rico, incluye los sueldos que el empleado hubiese recibido de haber sido reinstalado en su empleo. La Sec. 36 de la mencionada ley, 29 L.P.R.A. sec. 246h, señala que el "[término s]alario incluye sueldo, jornal, y toda clase de compensación, sea en dinero, especie, servicio, facilidades o combinación de cualquiera de ellos". Véanse: *Junta Rel. Trabajo v. Orange Crush*, 86 D.P.R. 652, 654 (1962), donde se reitera que el término "salario" bajo las disposiciones de la Ley de Salario Mínimo de Puerto Rico incluye toda clase de compensación, y *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240

"(b) an additional progressive indemnity equivalent to one week for each year of service. (Emphasis added).

"29 L.P.R.A. 185a. Article 2 of Act No. 80, 29 L.P.R.A. 185b, lists those situations considered "good cause" or valid reasons for discharge. A discharge for any reason other than those listed in Article 2 of Act No. 80, or for no reason at all, is considered a wrongful discharge entitling an employee hired for an indefinite term to damages, provided the employee files a claim against the employer within the three year limitation period beginning the effective date of discharge. 29 L.P.R.A. sect. 1851." (Énfasis en el original.) *Weatherly v. International Paper Co.*, supra, pág. 874.

En su pág. 875 esc. 3, añade lo siguiente en cuanto al término prescriptivo aplicable:

"Though neither party raised the issue, we note that Act No. 80 was not yet enacted when plaintiff was discharged in 1972. At that time, an employee was protected from wrongful discharge by Act No. 50, April 20, 1949, Act No. 80's predecessor. Other than the additional indemnification allowed by Act No. 80, Act No. 50 provided equal protection from unjust employment termination. However, unlike Act No. 80, Act No. 50 expressed no specific period of limitations to file a claim. Under the law of Puerto Rico when a statute is silent as to the period for prescription, resort is made to the most analogous term provided in the Civil Code. See *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740, 745 (1981). According to the language of both Act No. 50 and Act No. 80 a claim for wrongful discharge is a claim for indemnification. Hence, the one year statute of limitations for tort claim actions would govern Act 50 claims. *See Cortés v. Valdés*, 43 P.R.R. 134 (1932); see also, *Olmo, supra* at 745. When Act No. 80 was passed the legislature extended the limitations period to three years." (Énfasis en el original.)

(21) La Sec. 32 de la referida ley, 29 L.P.R.A. sec. 246d(a), dispone:

"Por el transcurso de tres (3) años prescribirá la acción en reclamación de salarios que pueda tener un empleado contra su patrono ... al amparo de cualquier contrato o ley. Para la prescripción de esta acción el tiempo se contará desde que el empleado cesó en su empleo con el patrono."

(1992), donde se expresa que el período para solicitar un aumento por reclasificación de puesto es el trienal establecido por la Ley de Salario Mínimo de Puerto Rico.[22] Hay que también tomar en consideración que por tratarse de un estatuto reparador en el área de la legislación obrero-patronal, le asiste una interpretación liberal a favor del empleado. *Nazario v. Vélez*, 97 D.P.R. 458, 460–461 (1969).

De lo anterior se puede colegir que por ser la situación de Estados Unidos distinta a la prevaleciente en Puerto Rico en lo que respecta a la protección del obrero en casos de despidos injustificados, allá por asemejarse los remedios concedidos a una acción en daños, se justifica el que se aplique por analogía el término prescriptivo de un (1) año de la acción en daños; mientras que aquí, por tratarse de un despido injustificado, con remedios amplios, el término prescriptivo más análogo es el trienal establecido en la legislación laboral mencionada.

## III

*Comienzo del término prescriptivo*

Nos corresponde determinar ahora cuándo debe comenzar el término prescriptivo de tres (3) años.

Resolvemos que el término prescriptivo debe comenzar a transcurrir desde el día en que el empleado solicita la reinstalación y su patrono no lo reinstala. Conforme a Morales Reyes, *op. cit.*, en ese momento se configura el despido. Hay que recordar que no hay ley alguna que exija

---

[22] Véase también, al mismo efecto, el Art. 1867(3) del Código Civil, 31 L.P.R.A. sec. 5297(3), que establece un término prescriptivo de tres (3) años para las reclamaciones de salarios. Sobre este artículo, equivalente al Art. 1967(3) del Código Civil español, señala el tratadista Luis Díez-Picazo:

"dentro del marco del contrato de servicios, la prescripción trienal afecta a todos los créditos que el trabajador ostenta para la retribución de su trabajo. Por tanto, no sólo respecto del salario en sentido estricto, sino a todas las demás prestaciones de carácter laboral." L. Díez-Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 209.

al patrono que despida a un empleado de forma determinada, es decir, por escrito o por cualquier otra clase de aviso. A partir de la aprobación de la Ley Núm. 50, *supra*, se eliminó la obligación de aviso previo al despido del empleado. Delgado Zayas, *op. cit.*, pág. 123. Tampoco nuestra legislación obliga al patrono a informarle al trabajador en el momento del despido, ni luego de ello, las razones que tuvo para despedirlo, excepto cuando va a defenderse en una acción judicial. Íd. Lo anterior, constituye una gran dificultad para determinar en qué momento un empleado es despedido. Por ello, se justifica una fecha fácilmente identificable y que le ofrezca al trabajador un aviso de cuándo puede ejercitar sus derechos.

En el caso ante nos, el demandante solicitó su reinstalación el 28 de febrero de 1989. Desde esa fecha comenzó a decursar el término prescriptivo de tres (3) años. El 18 de octubre de 1991, aproximadamente (2) dos años y ocho (8) meses más tarde, presentó la demanda contra Pueblo en la que reclamó los beneficios del Art. 5a, *supra*. Por consiguiente, su reclamación no está prescrita.

Por todo lo antes expuesto, *se dictará sentencia revocando la dictada por el tribunal de instancia y se devolverá el caso a dicho foro para que se continúen los procedimientos.*

El Juez Asociado Señor Hernández Denton disintió con opinión escrita, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Alonso Alonso. El Juez Asociado Señor Fuster Berlingeri está conforme con las partes II y III de la opinión mayoritaria.

– O –

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se unen el Juez Presidente Señor Andréu García y el Juez Asociado Señor Alonso Alonso.

Recurre ante nos Saúl Vélez Rodríguez debido a la sentencia sumaria dictada por el Tribunal Superior que desestimó la acción que había instado contra Pueblo International, Inc. y solicita su reinstalación en el empleo al amparo del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7. Ante la ausencia de un término prescriptivo fijado por la ley para iniciar la acción de reposición en su empleo (luego de que el obrero sea dado de alta por el Fondo del Seguro del Estado), el foro de instancia concluyó que, por analogía, le era aplicable el término de un (1) año de las acciones en daños y perjuicios. Concluyó, además, que éste transcurrió sin interrupción.

Por entender que aplica el término prescriptivo de un (1) año para iniciar una acción de reinstalación en su empleo, luego de que el obrero es dado de alta por el Fondo del Seguro del Estado, disentimos.

I

El señor Vélez se desempeñaba como gerente de recibo de mercancía para Pueblo International, Inc. (en adelante Pueblo). El 9 de junio de 1988, mientras desmontaba unas cajas en la rampa de la tienda Pueblo de Melanía, en Guayama, Vélez se resbaló y sufrió una lesión lumbar. Después de haber recibido tratamiento en el Fondo del Seguro del Estado, el 28 de febrero de 1989 le dieron de alta con un 10% de incapacidad.

En esa misma fecha, Vélez se comunicó con el señor Zaragoza, gerente de la tienda Pueblo de Melanía, y le solicitó la reinstalación en su puesto. Éste lo refirió al Sr.

David Segarra, Gerente de Distrito. Al cabo de semana y media, Vélez se comunicó con Segarra, quien —en lugar de reinstalarlo a su empleo— lo refirió para entrevista con la Sra. Magda Agostini, Gerente de Compensación y Beneficios. La entrevista se llevó a cabo durante el mes de marzo. Ella lo refirió al seguro social y al seguro privado de la compañía.

El recurrente nunca fue reinstalado en su empleo. El 18 de octubre de 1991, dos (2) años y ocho (8) meses después de haber solicitado la reinstalación, Vélez instó una demanda contra Pueblo al amparo del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 7 (en adelante Ley Núm. 45). En su demanda alegó que, a pesar de haber solicitado la reinstalación a tiempo, Pueblo incumplió la obligación que le imponía el Art. 5a de la Ley Núm. 45, *supra*. Solicitó que se le reinstalara en su antiguo empleo, que se le pagaran veintiocho mil ochocientos cuarenta y ocho dólares ($28,848) en salarios no devengados y tres mil dólares ($3,000) en concepto de daños.

Así las cosas, Pueblo presentó una moción de sentencia sumaria, fundada en que la demanda estaba prescrita. Sostuvo que el término prescriptivo aplicable era un (1) año, por analogía con el término que dispone el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, para exigir la responsabilidad civil por injuria o calumnia, así como por culpa o negligencia, a tenor con el Art. 1802 (31 L.P.R.A. sec. 5141). Adujo, además, que el término había comenzado a transcurrir el día en que Vélez solicitó la reinstalación, el 28 de febrero de 1989. Finalmente, argumentó que para el 18 de octubre de 1991, fecha cuando se instó la demanda, dicho término no había sido interrumpido mediante requerimiento extrajudicial alguno.

En su escrito en oposición a la moción referida, Vélez adujo que el término de prescripción aplicable no era de un (1) año, sino tres (3) años dispuesto para las reclamaciones

de salarios por el Art. 1867 del Código Civil, 31 L.P.R.A. sec. 5296, y la Sec. 32 de la Ley de Salario Mínimo de Puerto Rico, 29 L.P.R.A. sec. 246d(a). También señaló que, si el tribunal entendía que el término de un (1) año era el aplicable, él había realizado gestiones extrajudiciales desde la fecha cuando fue dado de alta por el Fondo del Seguro del Estado, encaminadas a interrumpir el término prescriptivo. Réplica [sic] a moción de sentencia sumaria, pág. 3. Argumentó, además, que el término prescriptivo había comenzado a transcurrir, no desde que nació su derecho a ser reinstalado, sino desde que supo que éste no se le reconocería.

En su réplica a la moción en oposición presentada por Vélez, Pueblo se reafirmó en que el término prescriptivo aplicable era un (1) año. Argumentó además que, transcurrido el término de un (1) año, surge una presunción *iuris tantum* de que la acción está prescrita y que es a la parte opositora a la prescripción a quien corresponderá presentar la prueba para derrotar esa presunción. Concluyó que, para oponerse a la moción de sentencia sumaria, no le bastaba a Vélez con reseñar generalidades en su declaración jurada, sino que debió demostrar que tenía una prueba específica de la fecha y la manera como hizo las reclamaciones extrajudiciales alegadas que tuvieron el efecto de interrumpir la prescripción.

El Tribunal Superior acogió la posición de Pueblo y dictó la sentencia sumaria oportunamente. Vélez presentó ante este Tribunal una solicitud de revisión y, mediante una resolución, ordenamos a Pueblo que compareciera a mostrar causa por la cual no debiéramos revocar la sentencia recurrida.([1]) En su comparecencia, Pueblo reiteró que apli-

---

([1]) En dicha resolución, intimamos que el término prescriptivo era un (1) año. Solicitamos a la recurrida que nos ilustrara a partir de cuándo éste comenzaba a correr. En cumplimiento de nuestra orden, la recurrida limitó su comparecencia ante este Foro a la discusión de cuándo comienza a transcurrir el término prescriptivo de un (1) año.

caba el término prescriptivo de un (1) año y que la demanda estaba prescrita. Tiene razón.

## II

El Art. 5a de la Ley Núm. 45, *supra*,(²) impone al patrono la obligación de reservar su puesto a un empleado que tenga que ausentarse por razón de haber sufrido un accidente en el trabajo. *Carrón Lamoutte v. Compañía de Turismo*, 130 D.P.R. 70 (1992). Si el patrono incumple esa obligación, el empleado podrá exigirle el pago de los salarios que hubiera devengado de haber sido reinstalado en su puesto, así como daños y perjuicios. Para ello podrá instar una acción ordinaria o valerse del mecanismo para la reclamación de salarios dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118–3132.

Ahora bien, el derecho a la reinstalación no es absoluto. Para ser acreedor a éste, el empleado deberá cumplir con las siguientes tres (3) condiciones: (1) que, dentro del tér-

---

(²) El Art. 5a de la Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 7, dispone lo siguiente:

"En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones: (1) que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de trascurridos doce meses desde la fecha del accidente; (2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición; (3) y que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.

"Si el patrono no cumpliere con las disposiciones de esta sección[,] vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios establecido en las secs. 3118 a 3132 del Título 32."

mino de quince (15) días a partir de ser dado de alta, el obrero requiera a su patrono que le reinstale, siempre que el requerimiento no se haga después de un (1) año de la fecha del accidente; (2) que el obrero esté física y mentalmente capacitado para desempeñar su empleo, y (3) que el empleo subsista (es decir, que esté vacante o lo ocupe otro obrero). *Santiago v. Kodak Caribbean, Ltd.*, 129 D.P.R. 763 (1992). Véase, además, *Carrón Lamoutte v. Compañía de Turismo*, supra.

Si el patrono se niega a cumplir con su obligación de reinstalación cuando se den las tres (3) condiciones reseñadas, el empleado podrá reclamar los remedios que le confiere el Art. 5a, *supra*.

Debido a que nuestro estatuto guarda silencio en cuanto a cuál es el término prescriptivo para llevar esta acción, es necesario llenar esa laguna legislativa mediante la aplicación del término prescriptivo más análogo. *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740, 744–745 (1981). Para ello, primero es necesario atender a la naturaleza del derecho que se intenta ejercer y aplicarle el término prescriptivo de las acciones de naturaleza análoga. *Ocasio Juarbe v. Eastern Airlines, Inc.*, 125 D.P.R. 410 (1990). Contrario a lo resuelto por la mayoría, consideramos que a la acción de marras —por su naturaleza torticera— aplica el término prescriptivo de un (1) año. Veamos.

## III

Mediante el Art. 5a de la Ley Núm. 45, *supra*, Puerto Rico se unió a la corriente de los estados de la unión norteamericana que adoptaron unas disposiciones análogas para proteger el derecho de los empleados a acogerse a los beneficios de las leyes de compensación por accidentes del trabajo. Así se fomenta que los empleados que se hayan ausentado de su trabajo por razón de haber sufrido una lesión compensable, regresen a su empleo cuando se recu-

peren y sean dados de alta por las entidades que los han tratado.

Otras jurisdicciones también confieren al empleado un derecho a que el patrono lo reemplee con preferencia sobre otros solicitantes, en un puesto adecuado, si no está capacitado para ser reinstalado en su posición original. Para configurar el derecho a la reinstalación, algunos estados exigen que el empleado demuestre que fue despedido por el patrono como represalia por haberse acogido a los beneficios de las leyes de compensación. Otros estados confieren el derecho independientemente de la motivación del patrono al rehusarse a reinstalar. Los remedios disponibles varían desde las meras sanciones administrativas hasta el derecho a exigir la reinstalación en conjunto con los salarios dejados de percibir.[3] Véanse: B.R. Cokeley, *West Virginia's New Workers' Compensation Anti-Discrimination Provision: the Road to Court Is Paved with Good Intentions*, 94 W. Va. L. Rev. 725 (1992); J.C. Love, *Retaliatory Discharge for Filing a Workers' Compensation Claim: the Development of a Modern Tort Action*, 37 Hastings L.J. 551 (1986).

Una de las defensas que con mayor frecuencia los patronos presentan contra este tipo de acciones es la de prescripción. Aunque todas las jurisdicciones reconocen esta defensa, han surgido controversias en cuanto a cuál es el término prescriptivo aplicable. Cuando el término no está definido por un estatuto, los tribunales de otras jurisdicciones han resuelto que el término debe ser el aplicable a las acciones torticeras, por ser esa la naturaleza de la acción. Véanse, *e.g.: Autrey v. Energy Corp. of America,*

---

[3] Véanse, *e.g.*: W. Va. Code Secs. 23–5A–3 (derecho a la reinstalación y a acción civil); Tex. Rev. Civ. Stat. Ann. Sec. 8307c (derecho a la reinstalación más daños y perjuicios razonables); La. Rev. Stat. Ann. Sec. 23:1361 (derecho a no ser despedido o a salarios que se hubiesen devengado); N.C. Gen. Stat. Sec. 97-6.1 (derecho a la reinstalación y daños y perjuicios cuando la acción del patrono constituye discrimen intencional); Or. Rev. Stat. Sec. 659.420(1) (derecho de reinstalación y a acción en equidad); Cal. Labor Code, Sec. 132a (1973) (derecho a la reinstalación y al reembolso de salarios y beneficios dejados de percibir).

*Inc.*, 594 So. 2d 1354, 1358 (1992); *Shanholtz v. Monoga-hela Power Co.*, 270 S.E.2d 178, 182 (1981). Véase, ade-más, Love, *supra*, pág. 580, donde el autor explica:

> The courts have uniformly applied a tort statute of limitations. The tort statute of limitations is appropriate because the cause of action is intended to punish the defendant for violating the spirit of workers' compensation legislation as well as *to compensate the employee for his or her resulting losses, including noneconomic losses.* (Citas omitidas y énfasis suplido.)

Igual solución se impone en nuestro ordenamiento.

La reclamación bajo el Art. 5a, *supra*, permite que el empleado recupere los *salarios que hubiese podido devengar* de haber sido reinstalado. Es decir, el Art. 5a, *supra*, presume que el empleado no ha sido reinstalado y, por lo tanto, no ha prestado servicio alguno al patrono contra quien reclama el pago de salarios. Por eso, el estatuto dispone que se calcule la indemnización correspondiente a base de un estimado de cuál hubiese sido el salario devengado por el empleado de haber sido reinstalado. En consecuencia, la indemnización de salarios que hubieran podido percibirse viene a ser una manera en que el patrono resarce al empleado cuando incumple con su deber de reinstalarlo. Véase Love, *supra*. Esa partida se asemeja más bien a una reclamación por lucro cesante que a una reclamación de salarios, en efecto devengados y no pagados. Nos explicamos.

Según M.A. Arco Torres, en su *Diccionario de Derecho Civil*, Pamplona, Ed. Aranzadi, 1984, T. II, pág. 175, el lucro cesante se define como una ganancia dejada de obtener. Se compone de la pérdida de ingresos ocasionada al perjudicado, así como de la disminución de su capacidad productiva.[4] *Rodríguez v. Ponce Cement Corp.*, 98 D.P.R.

---

[4] Recientemente, este Tribunal ha enfatizado el segundo componente de la partida de lucro cesante, a saber, la disminución de la capacidad para generar ingresos futuros. Véase *Torres Ortiz v. Plá*, 123 D.P.R. 637 (1989). Ello se debe a la preeminencia de dicho componente cuando la acción de daños y perjuicios nace de una lesión física incapacitante. Ello no implica que hayamos abandonado el componente

201, 218 (1969). El derecho a reclamar lucro cesante surge cuando las actuaciones del demandado ocasionan que el empleado sufra una reducción en su capacidad para generar ingresos o que no pueda trabajar o percibir ingresos que probablemente hubiese devengado según el curso normal de las cosas. *Torres Ortiz v. Plá*, 123 D.P.R. 637 (1989); *Publio Díaz v. E.L.A.*, 106 D.P.R. 854, 870 (1978). Luego, el lucro cesante es un daño patrimonial, elemento de todo resarcimiento de daños. Su monto o valor no tiene que demostrarse con certeza absoluta por parte del reclamante, pero sí debe probarse más allá de la especulación y la conjetura. *Torres Ortiz v. Plá*, supra. Véase, además, M. Morales Lebrón, *Diccionario jurídico según la jurisprudencia del Tribunal Supremo de Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1977, Vol. II, pág. 598. Como causa nacida de la culpa, comparte el término prescriptivo de un (1) año de la acción en daños. Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298.

En contraposición al lucro cesante, la reclamación de salarios devengados por servicios prestados no depende de cuántos ingresos hubiera podido devengar el empleado si el patrono no hubiese incumplido con su obligación legal de reinstalarlo. Por el contrario, la reclamación de salarios devengados persigue el pago de una suma concreta a la cual el empleado es acreedor porque prestó un servicio por el cual la ley exige el pago de una compensación específica. Así, la Sec. 32 de La Ley de Salario Mínimo de Puerto Rico, 29 L.P.R.A. sec. 246d(a), permite que todo obrero o empleado reclame contra su patrono cuando *"por su trabajo"* reciba una compensación inferior que aquella a la cual tiene derecho. El monto de lo debido es fácilmente calculable a base de lo que la ley requiere que se pague por el trabajo realizado. Esta reclamación nace de un contrato de trabajo y, por disposición expresa del Art. 1867 del Código Civil, 31 L.P.R.A. sec. 5297, y de la referida Sec. 32, pres-

---

de ingresos dejados de percibir como elemento de toda partida de daños.

cribe a los tres (3) años. Véase *Aponte v. Srio. de Hacienda, E.L.A.*, 125 D.P.R. 610 (1990).

En vista de que la reclamación de salarios que hubiesen podido devengarse bajo el Art. 5a, *supra,* comparte la naturaleza de la partida de lucro cesante que forma parte de toda indemnización de daños y perjuicios, rechazamos la posición mayoritaria sobre la aplicabilidad del término prescriptivo de tres (3) años de las acciones de reclamación de salarios devengados. El término de un (1) año de las reclamaciones de daños y perjuicios es el aplicable.[5]

Nuestra posición es además compatible con la intención legislativa que se desprende del estatuto. Éste contiene unos límites específicos de tiempo dentro de los cuales el empleado debe hacer valer su derecho a la reinstalación. El empleado tiene quince (15) días para pedir la reinstalación a partir de la fecha cuando le den de alta. En ningún caso, sin embargo, podrá pedirla luego de haber pasado un (1) año de la fecha del accidente. De esta limitación temporal se colige que el legislador consideró un (1) año como un término razonable durante el cual podía mantener al patrono en la obligación de reservar el puesto de un empleado. *Sifontes v. Oliver Exterminating Services*, 128 D.P.R. 207 (1991), opinión concurrente del Juez Asociado Señor Rebollo López.

En vista de todo lo anterior, nuestra posición es que si el empleado deja transcurrir el término prescriptivo de un (1) año sin instar la acción, o sin interrumpirlo extrajudicialmente, pierde su derecho a ser reinstalado. De igual forma, pierde el derecho concomitante a reclamar el salario que hubiese percibido, así como daños y perjuicios.

---

(5) En *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740 (1981), resolvimos que el término aplicable a una reclamación por despido discriminatorio bajo el Art. 2 de la Ley de Derechos Civiles, Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 147) es un (1) año. Entendimos que se trataba de una reclamación análoga a las de daños y perjuicios. Ahora bien, en la pág. 746, intimamos que si se tratara de una reclamación de salarios, aplicaría el plazo trienal de la Ley de Salario Mínimo de Puerto Rico. En ese entonces no contemplamos la acción para salarios que hubiesen podido percibirse, sino la acción para reclamar salarios por servicios prestados.

## IV

Nuestro análisis requiere que determinemos ahora cuándo comienza a transcurrir el término prescriptivo de un (1) año. El Art. 1930 del Código Civil, 31 L.P.R.A. sec. 5299, dispone que cuando no haya disposición especial que determine otra cosa, el término de prescripción se comenzará a contar desde el día cuando la acción pudo ejercitarse. Es decir, debemos atender la posibilidad legal de ejercitar la acción. *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943 (1991).[6]

Por otro lado, el propio Art. 1868, *supra*, dispone que el término de prescripción de las acciones para exigir la responsabilidad civil por culpa o negligencia, comienza a correr "desde que lo supo el agraviado". Ese momento implica necesariamente una manifestación ostensible que lleve al perjudicado a conocer del daño que ha sufrido, aun cuando no pueda calcular todavía toda su extensión y valor. *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1991); *Cintrón v. E.L.A.*, 127 D.P.R. 582 (1990); H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, págs. 638–639.

Ahora bien, cuando el agraviado no adviene en conocimiento del daño debido a su falta de diligencia o descuido, el cómputo del término prescriptivo no se aplaza. En ese caso, el término ha de correr desde el momento cuando el agraviado debió conocer del daño, mediante el ejercicio de la diligencia del hombre prudente y razonable. Véase *Colón Prieto v. Géigel*, 115 D.P.R. 232, 244 (1984), en donde se

---

[6] Excepción a esta norma general es la acción en daños contra el Estado bajo el Art. 2A de la Ley de Reclamaciones y Demandas Contra el Estado, Ley Núm. 104 de 29 de junio de 1955 (32 L.P.R.A. sec. 3077a) cuyo término prescriptivo comienza a correr desde que surge la causa de acción, aunque no pueda ejercitarse judicialmente aún por no haberse enviado la notificación al Secretario de Justicia. Véase *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1992).

cita a A. Borrell Maciá, *Responsabilidades derivadas de la culpa extracontractual civil*, 2da ed., Barcelona, Ed. Bosch, 1958, págs. 344–355. A estos efectos, explica el profesor Brau:

> La doctrina reconoce y acoge el principio que impone al perjudicado la obligación de emplear una razonable diligencia para enterarse de la consecuencia lesiva, esto es, del daño. ... [C]onsideramos que es correcto y justo presumir que la cláusula del Art. 1868 referente a *"cuando* lo supo el agraviado", implícitamente debe incluir la de *"cuando debió* saberlo con la debida diligencia". (Énfasis en el original.) Brau del Toro, *op. cit.*, pág. 639.

Así, en *Cintrón v. E.L.A.*, supra, pág. 592, expresamos que el término prescriptivo comienza a correr "desde aquel momento en que el empleado tiene o debe tener conocimiento de los daños causados". (Énfasis suplido.) La determinación del momento en que es imputable dicho conocimiento es tarea que depende del contexto en que surja la interrogante. Según explica el profesor Brau del Toro:

> ... [L]a doctrina concurre sustancialmente en que parece que debe presumirse que el perjudicado supo del daño en el momento mismo del acto culposo o negligente— ... y que, en todo caso, el agraviado tiene la carga de la prueba para establecer que obtuvo conocimiento en una fecha posterior. L. Díez-Picazo, *La Prescripción en el Código Civil*, Ed. Bosch, Barcelona, 1964, p. 240. Brau del Toro, *op. cit.*

La multiplicidad de contextos en los cuales puede surgir el problema de conocimiento del daño implica que situaciones de hecho distintas requerirán soluciones diversas. *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347, 360 (1988); *Rivera Encarnación v. E.L.A.*, 113 D.P.R. 383, 386 (1982). Por eso, al determinar el punto de partida del término prescriptivo en este caso, atendemos estrictamente a la controversia particular ante nos.

## V

El Art. 5a, *supra*, confiere al empleado el derecho a solicitar la reinstalación tan pronto sea dado de alta hasta quince (15) días después de esa fecha, pero nunca más tarde de un (1) año de la fecha del accidente. Una vez el empleado cumple con las tres (3) condiciones que impone el Art. 5a, *supra*, para solicitar su reinstalación, nace la obligación del patrono de reponerlo en su empleo. Dicha obligación es pura y, como tal, es exigible de inmediato. Art. 1066 del Código Civil, 31 L.P.R.A. sec. 3041. Por consiguiente, el patrono deberá reponer al empleado en su puesto a la mayor brevedad posible. De lo contrario, el empleado habrá adquirido un derecho a ejercer la causa de acción bajo el Art. 5a, *supra*.([7])

Por tal razón, estamos de acuerdo con la opinión mayoritaria en el sentido de que el término prescriptivo debe transcurrir desde el día en que el empleado solicite sin éxito su reinstalación.

El no ser reinstalado, luego de una solicitud, constituye además un hecho objetivo a partir del cual el agraviado adviene en conocimiento del daño. Por ende, tanto bajo el supuesto del Art. 1930, *supra*, como bajo el supuesto del Art. 1868, *supra*, el término prescriptivo de la acción de acuerdo con el Art. 5a de la Ley Núm. 45, *supra*, comienza a contarse desde que el empleado conoce que no será reinstalado. Consideramos, al igual que la opinión mayoritaria, que el punto de partida de dicho término es la fecha en que el empleado solicita la reinstalación. Ahora bien,

---

([7]) Podría argumentarse que, una vez el empleado solicite su reinstalación, el patrono tiene el año completo de prescripción para reponer en su empleo al empleado. En ese caso, el cómputo del período prescriptivo se resumiría a partir de que se cumpla el año de hecha la solicitud de reinstalación. No podemos, sin embargo, refrendar esa tesis. Entendemos que es irrazonable exigir a los empleados que esperen un (1) año para que el patrono tome acción sobre su solicitud. Estimamos más prudente exigir que el patrono honre lo más pronto posible el derecho de sus empleados a la reinstalación. Véase, *e.g., Kraxberger v. Chevron USA, Inc.*, 848 P.2d 1242 (Or. App. 1993), en que el tribunal de apelaciones de Oregon llegó a la misma conclusión.

diferimos de la opinión del Tribunal en cuanto no reconoce la posibilidad de que el empleado pruebe que no advino en conocimiento de que no sería reinstalado sino hasta una fecha específica posterior a aquella en que solicitó su reinstalación. En ese caso, consideramos que el término prescriptivo debe comenzar a correr desde esa fecha posterior. Por supuesto, esta norma está sujeta a la doctrina del hombre prudente y razonable. Ello implica que se puede imputar al reclamante el conocimiento que debió haber tenido de haber actuado como un hombre prudente y razonable.

En el caso ante nos, el empleado solicitó la reinstalación el mismo día en que fue dado de alta, el 28 de febrero de 1989.([8]) El patrono no honró la solicitud en ese momento. En lugar de reinstalarlo, lo refirió a la señora Agostini para que se acogiera a los beneficios de un seguro. Luego transcurrieron meses sin que el reclamante viera concretar su reinstalación.

El 18 de octubre de 1991, dos (2) años y ocho (8) meses más tarde, Vélez instó la acción correspondiente. Ante la defensa de prescripción, argumentó que el término prescriptivo comenzó a correr en una fecha posterior a aquella en que solicitó la reinstalación, cuando supo que no sería reinstalado. Sin embargo, no adujo ante el foro de instancia ni ante este Foro hecho concreto alguno que demostrara cuándo adquirió dicho conocimiento. Descansó más bien en las generalidades contenidas en sus alegaciones y en su declaración jurada. Hay dos (2) razones principales por las cuales no podemos refrendar su contención.

Primero, la comparecencia de Vélez en oposición a que se dictara sentencia sumariamente incumplió los parámetros que le impone la Regla 36.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, la cual reglamenta ese mecanismo. Ya en *Zambrana Maldonado v. E.L.A.*, supra, habíamos adver-

---

([8]) Tanto las partes como el foro de instancia presumieron que se dieron las tres (3) condiciones que hacen válida la solicitud de reinstalación.

tido que la prescripción extintiva es una presunción *iuris tantum* de abandono de un derecho. Quien se oponga a ésta debe presentar la prueba para refutarla. Por eso, cuando el amenazado con la extinción de su derecho se opone a que se dicte sentencia sumariamente por la defensa de prescripción, no puede descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones. Deberá demostrar que tiene prueba para sustanciarlas. *Flores v. Municipio de Caguas*, 114 D.P.R. 521, 525 (1982). Está obligado a exponer "aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio". Regla 36.5 de Procedimiento Civil, *supra*. Las declaraciones juradas que contienen meramente conclusiones, sin hechos específicos que las apoyen, no cumplen con estos criterios. No tienen valor probatorio y son insuficientes para sostener la veracidad de lo que se sostiene allí. *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 722 (1986).

En su oposición a que se dictara sentencia sumariamente, Vélez alegó que no fue sino hasta noviembre de 1991 cuando se percató que no sería reinstalado. De forma seguida, y a nuestro entender errática, adujo que el término prescriptivo debió comenzar a correr en septiembre de 1991. En su declaración jurada en apoyo de dicha comparecencia, Vélez no refrendó bajo juramento ninguna de estas contenciones. Tampoco acompañó documentos que avalaran su posición. Cabe dudar, pues, si realmente Vélez tiene pruebas para sustentarla.

Más aún, las aseveraciones escuetas que Vélez hiciera en su declaración jurada son insuficientes para oponerse a que se dicte sentencia sumaria. En cuanto a las gestiones extrajudiciales dirigidas a interrumpir la prescripción y en cuanto al momento en que advino en conocimiento de que Pueblo no lo reinstalaría, se limitó a aseverar lo siguiente:

7– Que ... [luego de marzo de 1989], mantuve comunicación constante con la Sra. Agostini para efectos de proveerle la in-

formación que me requirió y con la creencia de que todas estas gestiones culminarían en la reinstalación de mi empleo.

8– Que al percatarme de que la intención de Pueblo no era el reinstalarme en mi empleo, y habiendo transcurrido un término de un año y siete meses y en el cual mantuve siempre contacto con Pueblo, decidí entonces buscar ayuda legal. [Declaración Jurada de Saúl Vélez Rodríguez en apoyo de su Réplica [sic] a Moción de Sentencia Sumaria, pág. 1.] *Exhibit* 1, pág. 1.

Estas aseveraciones adolecen precisamente del defecto que señaláramos en *Corporation Presiding Bishop CJS of LDS v. Purcell,* supra, a saber, que meramente pretenden sugerir que el término prescriptivo comenzó a correr luego de 28 de febrero de 1989, sin señalar hechos específicos que sustenten dicha contención. El señor Vélez no podía pretender crear una controversia de hechos mediante sus alegaciones ni mediante las generalidades contenidas en su declaración jurada. Tenía que hacerlo de la manera fehaciente y específica que requiere la Regla 36.5 de Procedimiento Civil, *supra.*

En segundo lugar, no podemos aceptar que le tomara a Vélez cerca de dos (2) años darse cuenta de que no sería reinstalado. La declaración jurada de Vélez se limita precisamente a sugerir que, durante el transcurso de al menos un (1) año con siete (7) meses a partir de que solicitó su reinstalación, no se percató de que no sería reinstalado. Diferimos. Un hombre prudente y razonable debió percatarse de eso mucho antes. En efecto, mediante carta de 5 de febrero de 1991, dirigida al señor Laboy de Pueblo, la propia representación legal de Vélez admitió que las gestiones entre éste y Pueblo indicaban que "aparentemente la intención de la Compañía no era reponer al señor (sic) Vélez en su empleo". Carta de 5 de febrero de 1991, pág. 1.

En conclusión, como Vélez no demostró que él, de manera compatible con el proceder de un hombre prudente y razonable, se dio cuenta de que no sería reinstalado en una fecha específica posterior al 28 de febrero de 1989, por necesidad tenemos que contar el término prescriptivo a partir

de esa fecha. A menos que de alguna manera Vélez haya demostrado que interrumpió extrajudicialmente el término prescriptivo, es forzoso concluir que éste corrió inexorablemente.

## VI

El titular de un derecho tiene la prerrogativa de interrumpir el transcurso de la prescripción mediante una manifestación inequívoca de su deseo de no perder su derecho.[9] *Cintrón v. E.L.A.*, supra; *Feliciano v. A.A.A.*, 93 D.P.R. 655, 660 (1966). Conforme expone el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, el titular puede ejercer esa prerrogativa mediante la interposición de una acción judicial o mediante una reclamación extrajudicial. Ese artículo también dispone que se pueda interrumpir la prescripción mediante cualquier acto de reconocimiento de deuda por parte del sujeto pasivo del derecho en cuestión. El efecto de la interrupción eficaz de un término prescriptivo es que éste comienza a decursar nuevamente por entero a partir de dicha interrupción. *Cintrón v. E.L.A.*, supra; *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471, 474 (1980).

En el caso de marras, consideramos que la acción judicial se instó a destiempo por incumplir el término prescriptivo de un (1) año. Tampoco se alegó que Pueblo hubiese reconocido en algún momento su deber de reinstalar. Debemos, por lo tanto, dilucidar si el término prescriptivo se interrumpió extrajudicialmente.

No toda comunicación extrajudicial entre acreedor y deudor configura una reclamación extrajudicial que interrumpa el término prescriptivo de la acción. *Zambrana*

---

[9] Esta Curia también ha reconocido que los agentes del titular pueden interrumpir la prescripción, así como los terceros que tengan interés en el derecho, siempre que pueda atribuírseles la intención manifiesta de interrumpir. *De Jesús v. Chardón*, 116 D.P.R. 238, 248 (1985).

*Maldonado v. E.L.A.*, supra. La interrupción extrajudicial requiere mayor precisión. Ha de ser un acto mediante el cual el titular de un derecho se dirija al sujeto pasivo de dicho derecho, y le requiera que adopte el comportamiento debido. Véanse: *Cintrón v. E.L.A.*, supra; *Srio. del Trabajo v. F.H. Co., Inc.*, 116 D.P.R. 823, 827 (1986); *Díaz de Diana v. A.J.A.S. Ins. Co.*, supra, pág. 476. Véase, además, L. Díez-Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 130.

En su moción en solicitud de que se dictara sentencia sumaria, Pueblo alegó que entre el 28 de febrero de 1989 y el 28 de febrero de 1990, el reclamante no hizo gestión alguna para interrumpir la prescripción. En apoyo de su contención, acompañó cuatro (4) cartas que la representación legal del señor Vélez le había enviado a Pueblo. La primera de ellas tiene fecha de 5 de octubre de 1990 y se limitó a inquirir sobre el *status* del señor Vélez en la compañía. La segunda, de 8 de noviembre de 1990, reitera la misma interrogante de la carta anterior. Las últimas dos (2) cartas, de 5 de febrero de 1991 y 11 de febrero de 1992, son las que contienen un lenguaje que podría constituir una reclamación extrajudicial interruptora del término prescriptivo si éste no se hubiese extinguido aún.[10]

Por su parte, Vélez sostiene que interrumpió la prescripción mediante reclamaciones extrajudiciales. De nuevo descansa en las aseveraciones de su declaración jurada, conclusiones desnudas de algún fundamento de hecho específico que les insufle contenido. Aún considerando su oposición de la manera más favorable a él, no hallamos en los autos ni en los documentos anejados a las respectivas mociones bajo la Regla 36.5 de Procedimiento Civil, *supra*, algún hecho específico que avale su contención. En efecto,

---

[10] Efectivamente, en la comunicación de 5 de febrero de 1991 la representante legal del señor Vélez llamó la atención de Pueblo al hecho de que no se había reinstalado a su cliente. Ésta señaló, además, que lo anterior constituía una violación de la ley que daba derecho al empleado a reclamar salarios que hubiese devengado, así como daños y perjuicios.

la única interrupción posible de la prescripción surge de los documentos anejados a la moción de sentencia sumaria de Pueblo. Nos referimos a la carta de 5 de febrero de 1991. Ésta no constituyó, sin embargo, una reclamación extrajudicial capaz de interrumpir el término prescriptivo de un (1) año. Para ese entonces, ya habían transcurrido casi dos (2) años desde que Vélez solicitó la reinstalación. Los autos están desprovistos de documentos que avalen que ocurrió cualquier otro tipo de reclamación extrajudicial antes de esa fecha.

Como vimos anteriormente, la declaración jurada que Vélez unió a su moción en oposición se limitó a aseverar de manera general que él "mantuv[o] comunicación constante con la Sra. Agostini". *Exhibit* 1, pág. 1. Según la propia declaración, el objetivo de tales comunicaciones fue proveerle la información que ésta le solicitaba. En ningún momento Vélez sugiere que tales comunicaciones configuraban una manifestación inequívoca, dirigida a su deudor y recibida por éste, de su intención de hacer valer su derecho a la reinstalación. Pero aun de considerar que hubo alguna comunicación con efecto interruptor, Vélez tampoco precisó la fecha de tales comunicaciones, de modo que pudiéramos determinar cuándo quedó interrumpido el transcurso del término.

En fin, aun si presumimos que la carta de 5 de febrero de 1991 cumplía con los requisitos que la doctrina y la jurisprudencia han señalado para las reclamaciones extrajudiciales, ésta fue tardía. En cuanto a las contenciones de su declaración jurada, éstas son insuficientes para derrotar los documentos incontrovertidos que presentó Pueblo en su moción de sentencia sumaria, a los efectos de que las comunicaciones extrajudiciales que le hiciera la representación legal de Vélez no estaban dirigidas a interrumpir la prescripción, y aun de estarlo, fueron tardías. Como explicáramos anteriormente, una declaración jurada con con-

clusiones desprovistas de hechos específicos que las susten-
ten es insuficiente para derrotar una moción de sentencia
sumaria fundamentada, aun considerándola de la manera
más favorable a la parte que se opone a que se dicte sen-
tencia mediante ese mecanismo.[11]

En vista de que Vélez no demostró que existiera una
controversia real sustancial en cuanto a hechos materiales,
consideramos que el foro de instancia no erró al dictar sen-
tencia sumariamente y declarar prescrita su reclamación.
Procedía confirmar su dictamen. Por ende, disentimos.

---

[11] Cabe señalar que la reclamación estaría prescrita aun si presumiéramos
que el señor Vélez no se dio cuenta de que no sería reinstalado sino hasta pasados
varios meses luego de 28 de febrero de 1989. Antes del 5 de febrero de 1991, fecha de
la primera reclamación extrajudicial, pasaron casi dos (2) años completos.

A modo de ejemplo, examinemos la decisión de *Kraxberger v. Chevron USA, Inc.*,
supra. Allí, el tribunal de apelaciones de Oregon se enfrentó a una controversia
similar a la de marras. El 2 de marzo de 1988 la empleada tuvo que dejar su trabajo
debido a un accidente ocupacional. Desde entonces y en repetidas ocasiones solicitó a
su patrono que la reempleara en un puesto disponible y apropiado a su condición.
Pasaron casi dos (2) años antes de que la empleada instara la reclamación judicial
correspondiente en julio de 1990. En su demanda alegó que había solicitado su reins-
talación el 2 de marzo de 1988 y en febrero de 1990. Alegó, además, que no fue sino
hasta "varios meses" luego de marzo de 1988 que supo que existía un trabajo dispo-
nible y apropiado para ella. El tribunal confirmó la sentencia sumaria que desestimó
la acción por prescripción. Rechazó que cada solicitud de reempleo diera origen a una
nueva causa accionable, de modo que comenzara a correr nuevamente un término
prescriptivo. Explicó que, solicitada la reinstalación, el patrono tiene el deber de
concederla. Por eso, hecha la solicitud, el término prescriptivo de un (1) año comienza
a correr tan pronto como el empleado tenga o deba tener conocimiento de que existe
trabajo disponible y apropiado para él. El tribunal señaló que "[e]ven if we could
infer from her testimony that plaintiff first learned of the suitable job sometime
within the next year [luego de solicitar el reempleo], that is still more than one year
before she filed this action in July, 1990". *Kraxberger v. Chevron USA, Inc.*, supra,
pág. 1245.