Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (VI)

| | | |
|---|---|---|
| SASHA VALDÉS ORTA<br><br>Apelada<br><br>V.<br><br>PAN AMERICAN GRAIN MANUFACTURING, INC<br><br>Apelante | KLAN202400444 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala de Guaynabo<br><br>Civil núm.: GB2023CV00650<br><br>Sobre: Reclamación de Despido Injustificado, Bajo Proceso Sumario |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 23 de octubre de 2024.

Comparece ante este tribunal apelativo, Pan American Grain Manufacturing, Inc. (PAG o la apelante), mediante el recurso de *Apelación* de epígrafe solicitándonos que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (TPI), el 26 de abril de 2024, notificada ese mismo día. Mediante este dictamen, el foro primario declaró *Ha Lugar* a una *Querella* presentada por la Sra. Sasha Valdés Orta (la señora Valdés Orta o la apelada) e impuso a la apelante el pago de la mesada de $18,857.87, más $2,828.68 en honorarios de abogado.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

### I.

El 28 de julio de 2023, la señora Valdés Orta presentó ante el TPI una *Querella* en la que alegó que el 3 de noviembre de 2022 fue despedida injustificadamente de su puesto como Gerente de

Recursos Humanos. Por ende, reclamó el pago de la mesada, más la cantidad correspondiente al 15% de honorarios de abogado.[1]

El 25 de agosto de 2024, PAG presentó su *Contestación a Querella*, en la cual negó los hechos esbozados por la señora Valdés Orta y levantó defensas afirmativas.[2] Entre estas, indicó que "[l]a querellante fue despedida debido a que la compañía eliminó la plaza de Gerente de Recursos Humanos, la cual esta ocupaba. La plaza de Gerente de Recursos Humanos era única en la compañía."[3]

Luego de varios trámites procesales, que no son necesarios consignar, el 16 de abril de 2024, se llevó a cabo el juicio en su fondo. La prueba testifical de la parte querellante consistió en su propio testimonio. A su vez, la prueba testifical de PAG consistió en el testimonio de la Sra. Bárbara Bravo Montes de Oca, Directora de Recursos Humanos y Relaciones Laborales. Por otro lado, la prueba documental marcada como *exhibits* fue la siguiente:[4]

A. Prueba de la Parte Querellante

Exh. I Formulario W2 del año 2022
Exh. II Oferta de Empleo Departamento de Recursos Humanos, fechada el 12/18/2020
Exh. III Organigrama de *Human Resource Department Pan American Grain* con los cambios realizados

B. Prueba de la Parte Querellada

Exh. I (a) Correo electrónico de José González de 3 de octubre de 2022 y Organigrama de *Human Resource Department Pan American Grain* firmado
Exh. I (b) Organigrama de *Human Resource Department Pan American Grain* sin firmar
Exh. II Correo electrónico de Milton González a Sasha Valdés de 4 de octubre de 2022 y anejos (Notificaciones de cambio y *Personnel Action Form* para Bárbara Bravo, Lumarys Meléndez y Sabrina Serrano)
Exh. III Organigrama de *Human Resource Department Pan American Grain* con los cambios realizados

Luego de aquilatada la prueba testifical; así como la documental, el foro apelado dictó la *Sentencia* apelada declarando *Ha Lugar* a la querella instada por la señora Valdés Orta. En el

---

[1] Véase, Apéndice del Recurso, a las págs. 1-2.
[2] *Íd.*, a las págs. 6-8.
[3] *Íd.*, a la pág. 7.
[4] *Íd.*, a las págs. 55-56.

referido dictamen se consignaron trece (13) determinaciones de hechos, los cuales detallamos a continuación.[5]

1. Pan American Grain Manufacturing, Inc., reclutó a la Sra. Sasha Valdés Orta como gerente de Recursos Humanos, efectivo el 4 de enero de 2021.

2. Quedó bajo la sombrilla del director de Recursos Humanos, el Sr. Ariel del Valle Matos, quien también supervisaba a la gerente de Relaciones Laborales, plaza que ocupaba la Sra. Bárbara Bravo Montes de Oca.

3. El 3 de octubre de 2022, Pan American Grain remitió correo electrónico, de parte del presidente José González, en que se limitó a anunciar el ascenso de la señora Bravo Montes de Oca a directora de Recursos Humanos y Relaciones Laborales. (*Exhibit* 1A de la parte querellada).

4. Por consiguiente, el 3 de octubre de 2022, la señora Bravo Montes de Oca advino supervisora de la señora Valdés Orta.

5. Junto a la comunicación, se compartió un nuevo organigrama de la División de Recursos Humanos, en que figuraba la señora Valdés Orta, en calidad de gerente de Recurso[s] Humanos, entre la figura de la directora y la mayoría de los componentes de la división. (*Exhibit* 3 de la parte querellante, *exhibits* 1A y 1B de la parte querellada).

6. Al día siguiente, 4 de octubre de 2022, se requirió a la señora Valdés Orta tramitar cambios de puestos para tres empleados. Estos empleados no perdieron su empleo, ni se vieron afectados por el cambio. Por el contrario, los cambios representaron ascensos y aumentos de salario. (*Exhibit* 2 de la parte querellada).

7. Un mes después, el 3 de noviembre de 2022, Pan American Grain despidió a la señora Valdés Orta, sin explicación de clase alguna.

8. Ni la parte querellante ni la parte querellada presentó carta de despido o aludió a su existencia.

9. No medió amonestación previa a la señora Valdés Orta.

10. La señora Valdés Orta fue la única persona afectada por los cambios en la División de Recursos Humanos.

11. Pan American Grain no ofreció otra plaza a la señora Valdés Orta.

12. No consta evidencia documental de justificación para la eliminación de la plaza de gerente de Recursos Humanos, para la cual se había reclutado a la señora Valdés Orta hacía escaso año y diez meses.

13. La mesada e indemnización aplicable asciende a $18,857.87. (Estipulación de hechos 5, Informe de conferencia preliminar entre abogados, suscrito el 2 de febrero de 2024).

Así las cosas, el TPI razonó que "[d]urante el juicio, adujo Pan American Grain haber acometido una reestructuración de la división. Sin embargo, **esta alegación está huérfana de evidencia**

---

[5] *Íd.*, a las págs. 72-74.

**documental que recoja algún fundamento o explicación para la necesidad del cambio**. Tampoco se puede hacer abstracción de que la empresa recién había reclutado a la señora Valdés Orta, lo cual dificulta comprender el repentino giro en enfoque, que se manifestó exclusivamente en la supresión de la plaza de la querellante, en tan corto período de tiempo. [...] no media explicación o justificación para la supresión del puesto, más bien constancia de una determinación festinada. De avalarse el proceder de Pan American Grain, entonces le resultaría suficiente la mera invocación del deseo o capricho de eliminar una plaza, sin consecuencia alguna para el patrono. [...]".[6]

Inconforme con la decisión tomada por el TPI, la apelante acude ante este foro intermedio mediante el recurso de *Apelación* de epígrafe imputándole al foro primario haber incurrido en el siguiente error:

> ERRÓ EL TPI AL DETERMINAR QUE LA APELADA FUE DESPEDIDA POR PAG SIN JUSTA CAUSA, CUANDO LA PRUEBA PRESENTADA Y ADMITIDA EN EL JUICIO CLARAMENTE DEMUESTRA LO CONTRARIO, YA QUE SE ELIMINÓ UNA POSICIÓN OCUPADA ÚNICAMENTE POR LA PARTE QUERELLANTE.

El 6 de agosto de 2024, luego de varios trámites ante esta *Curia*, dictamos una *Resolución* dando por estipulada la Transcripción de la Prueba Oral Enmendada y concedimos término para la presentación de los alegatos suplementario y en oposición. El 11 de septiembre de 2024, PAG presentó su alegato suplementario, y el 16 de octubre siguiente, la apelada hizo lo propio mediante su *Oposición a Apelación*, así, nos damos por cumplidos y declaramos perfeccionado el recurso.

Analizados los escritos, el expediente apelativo y la Transcripción de la Prueba Oral Enmendada (TPO); así como estudiado el derecho aplicable, procedemos a resolver.

---

[6] *Íd.*, a la pág. 75.

**II.**

**La indemnización por despido sin justa causa**

La Ley núm. 80 de 30 de mayo de 1976, según enmendada, conocida como la *Ley de Indemnización por despido sin justa causa*, 29 LPRA sec. 185a *et seq.* (Ley núm. 80), confiere a todo empleado contratado, sin tiempo determinado, el derecho a ser indemnizado por su patrono en caso de ser despedido sin justa causa por este. *Vélez Rodríguez v. Pueblo Int'l, Inc.*, 135 DPR 500 (1994).[7] El fin de esta legislación es proteger económicamente al empleado del sector privado y desalentar el despido injustificado. *Romero et als. v. Cabrer Roig et als.,* 191 DPR 643, 649 (2014).

El Artículo 1 de la Ley núm. 80, 29 LPRA sec. 185a, expone que todo empleado despedido sin justa causa tendrá derecho a recibir una indemnización, además del sueldo que dejó de devengar. A esa compensación, se le conoce como la mesada cuya cuantía dependerá: (1) del tiempo que el empleado ocupó su puesto, y (2) del sueldo que devengaba. *Romero et als. v. Cabrer Roig et als.,* supra; *Rivera Figueroa v. The Fuller Brush, Co.*, 180 DPR 894, 905 (2011); *Vélez Cortés v. Baxter*, 179 DPR 455, 465-467 (2010). La mesada es el remedio exclusivo disponible para un empleado que ha sido despedido sin justa causa, o de modo injustificado. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 771 (2022).

El Artículo 2 de la Ley núm. 80, 29 LPRA sec. 185b, detalla las circunstancias, no taxativas, constitutivas de justa causa para el despido, las cuales son: (a) que el empleado observe un patrón de conducta impropia o desordenada; (b) que el empleado no rinda su trabajo eficientemente o lo haga tardía y negligentemente o en violación de las normas de calidad del producto que se produce o se

---

[7] A modo ilustrativo, resaltamos que la Ley núm. 4-2017, mejor conocida como *Ley de Transformación y Flexibilidad Laboral*, enmendó en varios aspectos la Ley núm. 80.

maneja por el establecimiento; (c) que el empleado viole reiteradamente las reglas y los reglamentos razonables establecidos para el funcionamiento del establecimiento, siempre que se le haya suministrado oportunamente copia escrita de estos; (d) que surja el cierre total, temporero o parcial de las operaciones del establecimiento; (e) que sucedan cambios tecnológicos o de reorganización, o la naturaleza del producto se produce o se maneja por el establecimiento y cambios en los servicios provistos al público; o, (f) que se requieran reducciones en empleo debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido. *Rivera Figueroa v. The Fuller Brush, Co.*, supra, a las págs. 905-906.

Por otro lado, no se considera justa causa para el despido de un empleado, "[...]aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". *León Torres v. Rivera Lebrón*, 204 DPR 20, 38 (2020). Por ende, la tarea de los tribunales en casos de despido injustificado es evaluar las situaciones específicas que se les presentan para determinar si existió la justa causa para el despido, aunque la situación no esté específicamente enumerada en el estatuto. *Jusino et als. v. Walgreens*, 155 DPR 560, 572 (2001).

En lo aquí pertinente, en *Segarra Rivera v. Int'l. Shipping et al*, 208 DPR 964 (2022), nuestro alto foro tuvo la oportunidad de reiterar y aclarar lo dispuesto en *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013), sobre la interpretación de la justa causa en el contexto de una reorganización empresarial según consignado en el Artículo 2, *supra*, incisos (e) y (f) de la Ley núm. 80. En consecuencia, y luego de consignado el derecho aplicable, el Tribunal Supremo resolvió, y citamos:

> "En armonía con el marco legal que detallamos previamente, el Art. 2 de Ley Núm. 80, *supra*, reconoce que **no se considerará despido por justa causa** aquel

que se hace por **mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento**. Así, para que los patronos puedan cesantear a sus empleados justificadamente sin la obligación de pagar la indemnización correspondiente, tienen que justificar esa decisión en alguna de las circunstancias esbozadas en los incisos (e) y (f) del referido artículo. Específicamente, si la razón esbozada alude al inciso (e), es decir, **bajo la teoría de reorganización empresarial**, la empresa no necesariamente tiene que alegar y probar que tuvo problemas económicos, sino que el patrono tiene que probar que, en efecto, **se realizó una reorganización de buena fe**, y que, como parte de ese plan, el empleado fue despedido. Es decir, al argumentar como "justa causa" una reestructuración, lo que el patrono debe demostrar es que la acción de modificar su manera de hacer negocios se hizo en consideración al buen y normal funcionamiento del establecimiento. Pues, el concepto justa causa está arraigado a consideraciones que atañen al manejo de la empresa. En ese sentido, como correctamente establecimos en *SLG Zapata v. JF Montalvo*, supra, **no es función de los tribunales administrar los negocios ni aconsejar a los directores de estos cómo manejar los asuntos de su empresa, siempre y cuando estas decisiones no estén motivadas por razones discriminatorias ni que mucho menos sean producto del mero capricho del patrono.**

Por consiguiente, según establecimos en *SLG Zapata v. JF Montalvo*, supra, para poder justificar el despido al amparo del Art. 2 inciso (e)-por reorganización-**el patrono debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad**. Ahora bien, hoy aclaramos, y pautamos que para demostrar justa causa, **basta con articular y presentar prueba sobre una razón válida para el despido**, como por ejemplo sería la **reorganización empresarial** de los servicios rendidos al público. En ese sentido, **la obligación que impone la Ley Núm. 80, supra, de probar efectivamente el proceso de reestructuración, no está sujeta a que se acredite la existencia de un proceso o plan de reestructuración de una *forma particular o específica***. O sea, basta con que el patrono demuestre que la acción **respondió a una decisión gerencial válida** a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad, y así, *tendrá que acreditarlo*. Ello, pues el patrono tiene derecho a hacer los arreglos o cambios que estime necesarios y convenientes para optimizar sus recursos y aumentar las ganancias de la empresa. [...]

[...] De este modo, un patrono podrá tomar la decisión de reorganizarse por cualquier motivo, siempre y cuando ello constituya una decisión empresarial válida, de utilidad y no un mero capricho. Es decir, siempre que surjan condiciones en la operación del negocio que así lo justifiquen. [...]." [notas al calce omitidas y énfasis en el original]. *Íd.*, a las págs. 1001-1002.

**La apreciación de la prueba y el estándar de revisión apelativa**

Es norma trillada que, en ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las

determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el Tribunal de Primera Instancia. *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). Esta norma de deferencia judicial descansa en que el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran; factores que van formando gradualmente en su conciencia la convicción sobre la verdad de lo declarado. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 68 (2009). Es ante la presencia de alguno de estos elementos o cuando la apreciación de la prueba no concuerde con la realidad fáctica, sea inherentemente increíble o claramente imposible, que se intervendrá con la apreciación efectuada. *Pueblo v. Irizarry,* 156 DPR 780, 789 (2002).

Además, en reiteradas ocasiones el Tribunal Supremo ha establecido "[...] que la declaración directa de un solo testigo, de ser creída por el juzgador de los hechos, es prueba suficiente de cualquier hecho. [...]" *Trinidad v. Chade,* 153 DPR 280, 291 (2001). Corresponde al tribunal sentenciador aquilatar la prueba testifical ofrecida y dirimir su credibilidad. En razón de ello repetidamente se ha establecido que, en asuntos de credibilidad de la prueba, se concederá gran deferencia a las determinaciones de hechos efectuadas por los tribunales de primera instancia. *Pueblo v. Torres Rivera,* 137 DPR 630 (1994). "Se impone un respeto a la aquilatación de credibilidad del foro primario en consideración a que, de ordinario, 's[o]lo tenemos récords mudos e inexpresivos'." *Pérez Cruz v. Hosp. La Concepción,* 115 DPR 721, 728 (1984). *Trinidad v. Chade,* supra, a la pág. 291.

De otra parte, cuando se evalúa la prueba documental, el foro apelativo se encuentra en la misma posición que el foro de primera instancia. Al tener ante sí los mismos documentos que desfilaron ante el juzgador de instancia, no hay emociones o comportamientos que el juzgador apelativo esté dejando fuera de la ecuación. "Somos conscientes, naturalmente, que en relación con la evaluación de prueba documental este tribunal está en idéntica situación que los tribunales de instancia." *Trinidad v. Chade*, supra, a la pág. 292.

### III.

En esencia, la apelante argumentó que erró el foro primario al sustituir el criterio gerencial de PAG por el suyo y al determinar que el despido de la señora Valdés Orta no estuvo justificado, a pesar de que la prueba demostró que este respondió a una reorganización legítima del Departamento de Recursos Humanos.

De entrada, recordamos que, en nuestro ordenamiento jurídico, cuando se cuestiona la apreciación de la prueba hecha por el foro primario, debemos dar deferencia y solo intervenir cuando se demuestra satisfactoriamente la existencia de pasión, prejuicio, parcialidad o error manifiesto.[8]

Como indicamos, y conforme a nuestro ordenamiento jurídico vigente, la apelante tenía que probar que, en efecto, se realizó una reorganización de *buena fe*, y que, como parte de ese plan, la apelada fue despedida. Es decir, PAG debió establecer que la modificación en el Departamento de Recursos Humanos se realizó en consideración al *buen y normal funcionamiento del establecimiento*. En consecuencia, nos corresponde examinar si la apelante presentó evidencia acreditativa del plan de reorganización implantado, así como su utilidad, que justificara el despido de la apelada al amparo del Artículo 2, inciso (e), de la Ley núm. 80.

---

[8] Véase, *Pueblo v. Maisonave*, 129 DPR 49, 62-63 (1991); *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002).

En este sentido, precisa apuntalar que, conforme a lo resuelto en *Segarra Rivera v. Int'l. Shipping et al,* supra, esta carga probatoria no está sujeta a acreditar de una forma particular o específica la existencia de un proceso o plan de reestructuración. Por ende, basta con que de la prueba surja de que PAG tomó la decisión de reorganizar el Departamento de Recursos Humanos **por cualquier motivo** y que el mismo demuestre que la acción respondió a **una decisión gerencial válida a la luz de las circunstancias** y que **no obedeció a un mero capricho o arbitrariedad**. Con este marco doctrinal pasamos a considerar la prueba presentada en el juicio.

Ahora bien, advertimos que cuando se evalúa la prueba documental, esta *Curia* se encuentra en la misma posición que el foro de primera instancia. En cuanto a este aspecto, durante el juicio se marcó como prueba documental el Organigrama *de Human Resource Department Pan American Grain con los cambios realizados* (Exh. III de la apelada); y el *Organigrama de Human Resource Department Pan American Grain firmado* (Exh. I- (a) de la apelante).

El organigrama firmado el 3 de octubre de 2022 intitulado *Human Resource Department Pan American Grain,*[9] el cual muestra la estructura gerencial, previo a la alegada reorganización, refleja que en el principal nivel jerárquico están el Presidente (José González) y el Vicepresidente (Milton R. González). Luego, en el próximo nivel inferior, se encuentra el puesto de *Human Resource and Employee Relation Director* (Bárbara Bravo). Bajo este cargo, está la posición de *Human Resource Management* ocupado por la Sra. Sasha Váldez (apelada). Asimismo, surge de dicho organigrama que bajo la supervisión directa de la Directora, Sra. Bárbara Bravo, se encontraba la apelada y dos (2) puestos adicionales. Por su parte,

---

[9] Véase, Apéndice del Recurso, a la pág. 61.

en el nivel más inferior habían ocho (8) puestos que le respondían a la apelada.

De otra parte, el organigrama con los cambios, que también fue titulado *Human Resource Department Pan American Grain* tiene como primer nivel jerárquico superior solo al Presidente (José González).[10] Bajo el Presidente, está el puesto de *Human Resource and Employee Relation Director* ocupado por la Sra. Bárbara Bravo. A su vez, bajo esta se encuentran once (11) puestos. En otras palabras, conforme a este nuevo organigrama, la supervisión y dirección de todos los componentes del Departamento de Recursos Humanos era responsabilidad de la Sra. Bárbara Bravo.

De otra parte, surge de la TPO que la **señora Valdés Orta** declaró poseer un bachillerato en Relaciones Laborales, una segunda especialidad en Recursos Humanos, una maestría en Recursos Humanos y a la fecha del juicio estaba terminando su segundo año del Programa Doctoral de Psicología Industrial.[11] Testificó que fue contratada por PAG para la posición de Gerente de Recursos Humanos y su supervisor inmediato era el Sr. Ariel Del Valle.[12] Añadió que comenzó a laborar el 4 de enero de 2021 hasta su despido el 3 de noviembre de 2022. Indicó que una vez el señor Del Valle es desvinculado de la compañía, ella le respondía directamente al Presidente y al Vicepresidente sobre todo lo relacionado con recursos humanos.[13]

Testificó que durante su desempeño no recibió ninguna amonestación.[14] **Esta aseveró que se entera en este proceso sobre que su plaza se eliminó, ya que mientras laboraba en la empresa nunca fue informada de ello ni que se realizaría algún tipo de**

---

[10] *Íd.*, a la pág. 70.
[11] *Íd.*, a las págs. 12-13.
[12] *Íd.*, a la pág. 14.
[13] *Íd.*, a la pág. 15.
[14] *Íd.*, a las págs. 21-22.

**cambio**.[15] Advirtió que **<u>no recibió alguna comunicación sobre la eliminación de la plaza que ocupaba</u>**.[16]

Durante el contrainterrogatorio, la apelada indicó haber recibido un correo electrónico (*email*), el 3 de octubre de 2022, con el nuevo organigrama y la señora Bravo pasó a ser su supervisora.[17] No obstante, esta aclaró que en "el Departamento de Recursos Humanos antes y después de este documento no hubo ningún cambio."[18]

Mencionó, además, que el 4 de octubre, es decir al día siguiente, se hicieron tres cambios de posiciones (funciones) para las empleadas Bárbara Bravo, Lumarys Meléndez y Sabrina Serrano según se ordenó en el correo electrónico (*email*) que le enviara el Sr. Milton González, los cuales a su vez fueron aprobados por ella.[19] Sobre esto, expresó que la razón para los cambios realizados se consignó en los documentos "cambio en la estructura del departamento".[20] En este particular, la apelada especificó que aun cuando se indicó dicha razón en los referidos documentos ello no necesariamente corresponde a una reorganización de la empresa.[21]

Aceptó, además, que la única Gerente de Recursos Humanos era ella.[22]

En el redirecto, la señora Valdés Orta manifestó que en los correos electrónicos del 3 y 4 de octubre de 2022 nunca se le informó expresamente que su posición como Gerente de Recursos Humanos fue eliminada.[23] Agregó que posterior al primer mensaje sus tareas nunca fueron alteradas o reducidas. "Mis funciones, mis tareas, el "reporting", todo permaneció igual.[24] De igual forma, la apelada

---

[15] *Íd.*, a las págs. 22 y 25.
[16] *Íd.*, a la pág. 25.
[17] *Íd.*, a las págs. 33, 35. Véase, además, Apéndice del Recurso, a la pág. 60.
[18] *Íd.*, a la pág. 32.
[19] *Íd.*, a las págs. 41-46. Véase, además, Apéndice del Recurso, a las págs. 63-69.
[20] *Íd.*, a la pág. 46.
[21] *Íd.*, a la pág. 47.
[22] *Íd.*, a la pág. 55.
[23] *Íd.*, a la págs. 56 y 60-61.
[24] *Íd.*, a la pág. 57.

reafirmó que en el organigrama que se circuló el 3 de octubre de 2022, su plaza de Human Resources Manager estaba "ahí, no estaba eliminada" y "esto fue lo último que yo vi antes de salir de la Compañía".[25]

Esta mencionó que los documentos de notificación de cambio constituían transacciones individuales que no le afectaban a su plaza; y sobre Lumarys Meléndez, el cambio no es del 19 de septiembre de 2022 lo que no está vinculado a la llamada reorganización del 3 de octubre siguiente. La apelada también explicó que un cambio de título o en compensación no necesariamente cumple con el requisito de reorganización. "Porque para que tú hagas una reorganización tienes que perseguir un fin en particular; estás buscando una eficiencia, estás buscando una productividad, no necesariamente es el resultado de una negociación de que te voy a aumentar el salario porque tienes años de servicio. O sea, que hay que distinguir las transacciones."[26]

Por otro lado, durante su testimonio, la **Sra. Bárbara Bravo Montes de Oca (señora Bravo**), Directora de Recursos Humanos y Relaciones Laborales, declaró que para septiembre de 2022, en reunión con los tres vicepresidentes de PAG, le informaron que las plazas de Gerente de Recursos Humanos y Gerente de Relaciones Laborales iban a ser eliminadas, y que le ofrecieron la de Directora de Recursos Humanos.[27] Testificó que en dicha reunión le indicaron que ello sería por fases, que la primera fase era que ella ocupara dicho puesto, y que "además de eso, pues cambiaríamos, verdad, unas personas dentro del organigrama para, este, tener la reestructuración completa del área de Recursos Humanos."[28]

---

[25] *Íd.*, a la págs. 59-60.
[26] *Íd.*, a la pág.  66.
[27] Véase, la TPO a las págs. 95, 97.
[28] *Íd.*, a la pág. 97.

También indicó que la primera fase entró en vigor en octubre de 2022 y su labor era "verificar cada uno de los puestos que estaban dentro del área de Recursos Humanos, y hacer unos cambios dentro de esta fase."[29] En octubre de 2022, comenzó como Directora de Recursos Humanos, y mencionó que hubo los cambios de Lumarys Meléndez y Sabrina Serrano.[30]

En cuanto a la fase dos, declaró que esta consistía en la eliminación de los puestos de Gerente de Recursos Humanos y Relaciones Laborales.[31] Luego expuso sobre algunos cambios que solo constituyeron cambios de nombre del puesto y/o de las tareas.[32]

Agregó que ella preparó el organigrama donde se evidencia la segunda fase.[33] Mencionó que luego de la fase dos el puesto de Gerente de Recursos Humanos no existe.[34]

Durante el contrainterrogatorio esta aceptó que no existe documento que evidencie que a ella le fue asignada la tarea de hacer unos cambios.[35] Asimismo, expresó que no se preparó minuta de la reunión celebrada para la implementación de la fase uno, y que no recordaba la fecha de la reunión para la implementación de la fase dos.[36] Luego dijo acordarse y que se prepararon las minutas, pero no fueron traídas al juicio.[37] Durante su testimonio el Hon. Julio De la Rosa Rivé indicó a objeciones de la apelada "Ha lugar a la objeción. Está clarísimo que no se ha traído ningún documento, ni de fase uno, ni de fase dos".[38] "No hay minutas presentadas." *Íd.*

La testigo también aseveró que de octubre de 2022 ya se había identificado que era necesario la eliminación de la posición de

---

[29] *Íd.*, a la pág. 101.
[30] *Íd.*, a la pág. 102.
[31] *Íd.*, a las págs. 104,110.
[32] *Íd.*, a las págs. 105-109; 121-123.
[33] *Íd.*, a la pág. 110.
[34] *Íd.*, a las págs. 111-112.
[35] *Íd.*, a la pág.126.
[36] *Íd.*, a las págs. 126-127.
[37] *Íd.*, a las págs. 127-128.
[38] *Íd.*, a la pág. 130.

gerente de Recursos Humanos y la persona que la ocupaba.[39] Luego se le preguntó que las funciones de dicho puesto le fueron asignadas a otra empleada a lo que esta contestó que "no".[40] La señora Bravo fue confrontada con su contestación al interrogatorio, en el cual admite que las funciones y responsabilidades de la apelada fueron encomendadas a otras empleadas de la empresa.[41]

La testigo aceptó que la única empleada que fue despedida en los alegados cambios fue la señora Valdés Orta.[42]

Culminado el contrainterrogatorio, el Hon. Julio De la Rosa Rivé le realizó varias preguntas a la señora Bravo. A preguntas del tribunal señaló que el organigrama marcado como Exhibit III lo preparó ella *inmediatamente se terminó el proceso de reestructuración completa.*[43] Indicó que la reestructuración finalizó "a finales de noviembre, a mediados de noviembre aproximado."[44] Además, declaró que luego de cesanteado el Sr. Ariel Del Valle, anterior Director, se preparó un nuevo organigrama. "... Como le comenté anteriormente, cada vez que hay algún tipo de modificación, se prepara un organigrama completo. Nos hace falta para las diferentes auditorías y todo lo demás."[45]

Por último, la señora Bravo admitió que se nombró a la Sra. Mariliz Marrero como Coordinadora de Recursos Humanos de Vega Alta y que no se le ofreció esa plaza a la apelada.[46]

En virtud de los antedichos testimonios, vertidos durante el juicio, y de la prueba documental admitida, no existe **evidencia que acredite el plan de reorganización implantado; así como su**

---

[39] *Íd.*, a las págs. 130- 131.
[40] *Íd.*, a las págs. 140-141.
[41] *Íd.*, pág. 142. Quedó consignado para récord que en la contestación del interrogatorio fue en singular y su contestación en sala fue en plural. *Íd.*, a la pág. 143.
[42] *Íd.*, a la pág. 144.
[43] *Íd.*, a las págs. 147, 148.
[44] *Íd.*, a la pág. 148.
[45] *Íd.*, a la pág. 150.
[46] *Íd.*, a la pág. 155.

**utilidad** que demuestren que la acción **respondió a una decisión gerencial válida** a la luz de las circunstancias y que no obedeció a un mero capricho o arbitrariedad. Tampoco encontramos que la referida reorganización se fundamentó en la consideración de haber surgido condiciones en la operación del negocio que justificaran la decisión empresarial. Más bien, quedó evidenciado que la gerencia de la empresa realizó el cambio de puesto de la señora Bravo; así como aumentos de salarios a dos empleadas que, en realidad, como bien explicó la apelada, y a nuestro entender, no constituyen una reorganización del Departamento de Recursos Humanos. Sobre este punto, advertimos que, conforme a los organigramas confeccionados por la señora Bravo, estas empleadas permanecieron en el mismo puesto antes y después de la reorganización, a saber: Sra. Lumarys Meléndez, *Employee & Labor Relation Supervisor*, y Sra. Sabrina Serrano, *HR Business Partner*.[47] Además, de ambos organigramas surge claramente que la Sra. Lumarys Meléndez siempre le ha respondido directamente al puesto que ocupa la señora Bravo.[48]

De igual manera, precisa enfatizar que la única plaza eliminada fue la de Gerente de Recursos Humanos ocupada por la señora Valdés Orta. Esto, recalcamos sin que la señora Bravo pudiera establecer una justificación válida para dicha determinación empresarial. Más bien, solo declaró que la fase dos de la reorganización consistía en la eliminación de este puesto y el de Relaciones Laborales sin detallar cuál fue la condición en la operación de PAG que justificara este cambio.

Apuntalamos, además, que en la primera reunión que sostuvo la señora Bravo, con dos de los tres Vicepresidentes Ejecutivos de la empresa para dialogar sobre los cambios al Departamento, estos no le informaron el porqué de la eliminación de la plaza de la apelada.

---

[47] Véase, Apéndice del Recurso, a las págs. 62 y 70.
[48] *Íd.*

Solo le expresaron que se realizarían unos cambios en el organigrama para reorganizar el Departamento, pero **sin informarle los fundamentos de la utilidad o condiciones de negocio que ameritaran dicho proceder**. Sin embargo, destacamos que ninguno de los referidos gerenciales testificó en el juicio, ni hubo prueba que acreditara que la señora Bravo fue la encargada de preparar el plan de reestructuración y su implementación.

De otra parte, de los correos electrónicos del 3 y 4 de octubre de 2022, no surgen indicios para entender que de estos documentos se podía inferir que el puesto que ocupaba la apelada sería eliminado por una reorganización. A su vez, no obviemos que la apelada declaró, sobre el primer mensaje, que en "el Departamento de Recursos Humanos antes y después de este documento no hubo ningún cambio." También afirmó que posterior a dicho mensaje sus tareas nunca fueron alteradas o reducidas. Testificó que: "Mis funciones, mis tareas, el "reporting", todo permaneció igual.

Por su parte, de estos mensajes electrónicos, como mencionamos, solo surge el cambio de plaza de la señora Bravo; así como los aumentos de compensación de las señoras Lumarys Meléndez y Sabrina Serrano. Los que no estaban relacionados con el puesto de Gerente de Recursos Humanos que ocupaba la señora Valdés Orta.

Asimismo, de la prueba presentada surge, como una razón para un nuevo organigrama, la cesantía del Sr. Ariel Del Valle. No obstante, reiteramos que, en cuanto al despido o eliminación de la plaza de la apelada, no existe prueba alguna que demuestre que esta respondió a una decisión gerencial válida.

En conclusión, actuó correctamente el TPI al concluir que la alegación sobre reestructuración está huérfana de evidencia documental, y añadimos testifical, que recoja algún fundamento o explicación para la necesidad de cambio. No consta evidencia que

justifique la eliminación de la plaza de Gerente de Recursos Humanos, para la cual se había reclutado a la señora Valdés Orta hacía escaso año y diez meses. "… no media explicación o justificación para la supresión del puesto, más bien constancia de una determinación festinada."[49]

En fin, al no existir pasión, prejuicio, parcialidad o error manifiesto, damos entera deferencia al foro primario y forzoso es concluir que el error señalado no se cometió.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[49] Véase, Apéndice del Recurso, a la pág. 75.